IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRENT RAY BREWER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:15-CV-50-D |
| | § | *Death Penalty* |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT PETITIONER'S MOTION TO STAY and TO STAY PROCEEDINGS**

Petitioner Brent Ray Brewer has filed a motion to stay these federal habeas proceedings to exhaust claims in state court [ECF 53], a motion for discovery and evidentiary hearing [ECF 54], and a motion for leave to supplement his petition for a writ of habeas corpus. [ECF 57]. Respondent Lorie Davis has filed responses in opposition [ECF 61, 63], and Brewer has filed replies. [ECF 62, 66]. Because the undersigned recommends that these proceedings be stayed for exhaustion, the other motions should be denied as moot without prejudice.

I.
BACKGROUND

Although petitioner Brewer has not yet proven that his unexhausted claims have merit, they do not all appear to be plainly meritless. The resolution of at least one of these claims may depend on evidentiary development that would be inappropriate for a claim that is procedurally barred. *See, e.g., Wellons v. Hall*, 558 U.S. 220, 222 (2010) (observing that "[h]aving found a procedural bar, however,

the Eleventh Circuit had no need to address whether petitioner was otherwise entitled to an evidentiary hearing"); *Segundo v. Davis,* 831 F.3d 345, 350-51 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 1068 (2017) (holding habeas petitioner not entitled to evidentiary hearing to prove exception to procedural bar). But because it is generally for the state court to determine whether an unexhausted claim would be procedurally barred if now presented there, comity is best served by letting the state court make this determination in the first instance. *See Engle v. Isaac,* 456 U.S. 107, 110, 119 (1982) (federal courts in post-conviction habeas-corpus proceedings do not sit to review questions of state law); *Johnson v. Cain,* 215 F.3d 489, 494 (5th Cir. 2000); *Dickerson v. Guste,* 932 F.2d 1142, 1145 (5th Cir. 1991). Indeed, "comity and judicial economy make it appropriate to insist on complete exhaustion where 'unresolved questions of fact or of state law might have an important bearing.'" *Horsley v. Johnson,* 197 F.3d 134, 137 (5th Cir. 1999) (quoting *Granberry v. Greer,* 481 U.S. 129, 134-35 (1987)).

Brewer also shows that the failure to exhaust these claims, including the ineffective assistance of trial counsel, may be attributed to ineffective assistance of state habeas counsel that may also come within the exception to procedural bar set out in *Martinez v. Ryan,* 566 U.S. 1 (2012), and constitute good cause and a lack of dilatory intent in failing to exhaust. *See Blake v. Baker,* 745 F.3d 977, 983 (9th Cir. 2014) (holding that IAC by post-conviction counsel can be good cause for a *Rhines* stay); *Sparks v. Stephens,* 2014 WL 113583 at *2-3 (N.D.Tex. Jan.13, 2014); *Black v. Stephens,* No. 3:14-CV-341-L BH, 2014 WL 5013409, at *2 (N.D. Tex. Aug. 18, 2014), *report and recommendation adopted,* No. 3:14-CV-341-L, 2014 WL 5013059 (N.D. Tex. Oct. 7, 2014). To come within the *Martinez* exception, a habeas petitioner must also show that the asserted claim of ineffective assistance of counsel is a substantial one, that is one that has some merit. *See Martinez,* 566 U.S. at 14. This may require the kind of evidentiary development that should normally occur at the state, rather than federal,

level.

> Principles of exhaustion are premised upon recognition by Congress and the Court that state judiciaries have the duty and competence to vindicate rights secured by the Constitution in state criminal proceedings. . . . "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."

*Williams v. Taylor,* 529 U.S. 420, 436-37 (2000) (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999)).

If Brewer returns to the state court to exhaust any claim, then he should present all claims and requests for evidentiary development that he may have before returning to this Court to file any new amended or supplemental petition following exhaustion and seek whatever evidentiary development may be appropriate for the state court to consider the matter. Therefore, a stay of these proceedings for exhaustion will render the other pending motions moot at this time.

## II.
## STAY OF PROCEEDINGS

Brewer requests that these proceedings be stayed so that he may return to the state courts to present his claims relating to: (1) trial counsel's alleged failure to conduct an investigation into the prior bad acts presented by the State as evidence of petitioner's alleged future dangerousness (Claim IV); (2) the State's alleged failure to disclose impeachment evidence of a coactor, the trial court's failure to order the disclosure of the evidence, and trial counsel's ineffectiveness in failing to discover it (Claim VII); and (3) the alleged violation of petitioner's right under the Ex Post Facto Clause to a new trial under a 1993 state law and trial and appellate counsel's failure to raise the issue (Claim XIII). At least one of these groups of claims is not plainly meritless.

A. Standard

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a district court has discretion to stay a petition containing unexhausted claims so that the habeas petitioner may return to state court to exhaust such claims in limited circumstances.

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.*, at 277 (citing 28 U.S.C. § 2254(b)(2)). The Supreme Court further cautioned against the undue refusal to allow development of such claims.

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id.*, at 278.

Extra care is also appropriate in the disposition of this case in which the death penalty has been assessed, so that any potentially meritorious claim may be properly considered before an execution is allowed to proceed and that any unwarranted delay is avoided. *See Rhines*, 544 U.S. at 277-78 (expressing caution about the special danger of delays in death-penalty cases). This Court must determine (1) whether good cause exists "for the failure to exhaust the claim," (2) whether the unexhausted claims are "plainly meritless," and (3) whether "the failure was for purposes of delay." *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010).

B. Good Cause

Brewer claims that good cause exists to excuse the procedural default because of "state habeas

counsel's ineffectiveness with regard to numerous claims involving ineffective assistance of counsel and evidentiary support for those claims." [ECF 53 at 7]. Brewer asserts that "state habeas counsel unreasonably limited his investigation and thus did not conduct an objectively reasonable investigation that would have revealed numerous other meritorious issues in this case, some of which were apparent from the record." *Id. at 9*.

> State habeas counsel alleged trial counsel's failure to conduct a reasonable mitigation investigation, but did not investigate the related issue of trial counsel's shoddy investigation of the bad acts evidence used in aggravation. *See* Claim IV; Sheard Aff. ¶¶ 31-33. State habeas counsel Wardroup admits that he "had no strategic or tactical reason for not gathering records" concerning prior bad acts evidence. Wardroup Aff. ¶ 5. He therefore has good cause (i.e., "a reasonable excuse") for his failure to exhaust Claim IV—his abandonment by counsel and counsel's admittedly ineffective investigation.

*Id.* at 10.

In fact, Brewer accepted respondent's summary of his allegations of good cause for the failure to exhaust:

> Brewer's claim of "good cause" rests primarily on the alleged shoddy performance by his original habeas attorney, Richard Wardroup. In general, Brewer alleges that Wardroup "abandoned" him at certain points on state habeas review, was unable to devote the time and resources necessary to investigate and develop claims, had to seek additional help, delayed the hiring of investigators, and failed to conduct a sufficient investigation into mitigating evidence and other issues.

[ECF 62 at 3 (quoting ECF 61 at 7)]. Brewer took issue, however, with respondent's asserted language for determining "good cause" under *Rhines*. Although respondent appears to acknowledge that "good cause" under *Rhines* can be established by showing ineffective assistance of habeas counsel under *Martinez v. Ryan* for failing to present certain claims of ineffective assistance of trial counsel to the state court, Brewer argues that even that is too restricting under *Rhines*. "As Petitioner has already stated, 'the standard for 'good cause' under *Rhines* is a lower standard than is required to show cause

to excuse procedural default.'" [ECF 62 at 5 (quoting ECF 53 at 9)].

Both parties appear to acknowledge that the ineffectiveness of state habeas counsel under *Martinez* could establish "good cause" to excuse Brewer's failure to exhaust claims of ineffectiveness of trial counsel under *Rhines*. Respondent asserts this as the only exception to his argument that the ineffectiveness of state habeas counsel could not assert good cause. [ECF 61 at 7]. Brewer argues that this standard is too restrictive. [ECF 62 at 3-5].

"Good cause" under *Rhines* has not been defined by either the Supreme Court or the United States Court of Appeals for the Fifth Circuit. In his concurring opinion in *Rhines*, Justice Stevens noted that " 'good cause' for failing to exhaust state remedies more promptly . . . is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary pro se prisoner.'" *Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (quoting *Rose v. Lundy*, 455 U.S. 509 (1982)). In discussing this term, this Circuit has determined that the Supreme Court did not intend it to mean "good excuse" in the technical sense, but rather "good cause" in the equitable sense. *See Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007).

The United States Court of Appeals for the Ninth Circuit has held that "good cause" under *Rhines* is less stringent than their "extraordinary circumstances" standard, *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir.2005), but that a habeas petitioner's "impression" that his counsel had exhausted an unexhausted claim would still not constitute "good cause" for failure to exhaust that claim. *See Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008). The United States Court of Appeals for the First Circuit has held that "ignorance of the law does not constitute good cause," *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007), and that a habeas petitioner's strategic decision to omit some claims from his state court application for leave to obtain further appellate review could not amount to "good cause"

under *Rhines*. *See Clements v. Maloney*, 485 F.3d 158, 169-71 (1st Cir. 2007). Pointing to a lack of "consensus among federal courts on what constitutes 'good cause' within the meaning of *Rhines*," one court has concluded that "it is analogous to the external 'cause' required to excuse a procedural default." *Brawner v. Epps*, 2008 WL 1745541 (N.D. Miss., Apr. 11, 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (requiring petitioner to demonstrate some "objective factor external to the defense" that made it impossible to bring the claim earlier in State proceedings)). This appears to be a more stringent standard than applied by most courts.

For example, in *Blake v. Baker,* the United States Court of Appeals for the Ninth Circuit held that the ineffective assistance of post-conviction counsel could constitute good cause for a *Rhines* stay, provided that the petitioner's assertion of good cause "was not a bare allegation of state postconviction [ineffective assistance of counsel], but a concrete and reasonable excuse, supported by evidence." 745 F.3d 977, 983 (9th Cir. 2014). The court of appeals did not require that the habeas petitioner prove the exception to procedural bar, but observed that "good cause under *Rhines,* when based on [ineffective assistance of counsel], cannot be any more demanding than a showing of cause under *Martinez* to excuse state procedural default." *Id.* at 983-84.

The Supreme Court has recognized that good cause under *Rhines* is established in the absence of any showing of cause and prejudice to excuse a procedural bar, even when a state prisoner merely files a federal petition prematurely if the prisoner had "reasonable confusion about whether a state filing would be timely." *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005). Indeed, to require an inmate to fully prove an exception to a procedural bar before being allowed the opportunity to develop evidence in the state court in support of his claim would appear contrary to principles of comity that defer to evidentiary developments in and determinations by the state court that such a stay would be intended

to allow. It would make little sense to require a habeas petitioner to plead and prove what would be necessary for him to obtain relief in federal court so that he may obtain a stay of the federal proceedings to develop and present those same claims to the state court. Such a requirement would be inconsistent with *Rhines* in which the Supreme Court did not require a habeas petitioner to prove that a claim has merit but merely that it is potentially meritorious, or not plainly meritless. Certainly, if the purpose of the stay is to allow evidentiary development of claims and factual determinations by the state court that are entitled to deference in the federal court, then such evidentiary development should be allowed to occur there in the first instance.

In his first group of claims, Brewer asserts that trial counsel failed to investigate bad acts that the prosecution provided notice of its intent to present and did present in the punishment retrial as evidence of petitioner's alleged future dangerousness, as set out more fully below. Brewer has produced an affidavit from his state habeas counsel, Richard Wardroup, in which he admitted that he failed to perform an adequate investigation into those bad acts.

> 2. Other than my review of the record and my interview with Brent Brewer, I directed no investigation into the prior bad acts presented by the State against Mr. Brewer. As the Capital Assistance Attorney with the TCDLA, I am well aware that a reasonable strategy cannot be made without first conducting an adequate investigation. We train attorneys across Texas that before deciding on a strategy, it must be adequately investigated. This we did not do regarding this issue.
>
> 3. I am familiar with the evidence gathered by current federal counsel for Mr. Brewer concerning the prior bad acts evidence. If I had this evidence, I would have wanted to present it to the state habeas court.
>
> 4. I hired Joe Ward to conduct our factual investigation. Mr. Ward conducted some jury interviews in Amarillo. Sometime thereafter, he took a job as an investigator with the Regional Public Defender's Office and had to stop work on this case. We did not hire another fact investigator and no further factual investigation took place.
>
> 5. We had no strategic or tactical reason for not gathering records federal counsel has obtained, including Albert Brewer's military records. If we had the military records,

>   we would have presented this evidence to the state habeas court. We also would have
>   presented any other evidence contained in records presented by federal counsel that we
>   did not gather.

(Wardroup Aff. at 1). Respondent argues that state habeas counsel otherwise performed effectively, but recognizes that Wardroup "falls on his sword" regarding this claim. [ECF 61 at 6].

Brewer has produced evidence of deficient performance by state habeas counsel regarding this claim. He has made more than "a bald assertion" of ineffective assistance by state habeas counsel, and has shown the kind of "reasonable excuse, supported by evidence" that other courts have found to show good cause to justify a petitioner's failure to exhaust. *Blake,* 745 F.3d at 982. The undersigned must now determine whether the unexhausted claim is "plainly meritless" under the standard set forth in *Rhines* for such ineffective assistance of trial counsel claims.

### C. Plainly Meritless

The bad acts presented by the prosecution at trial included Brewer's assault on his high school girlfriend Aimee D. Long that was offered to show that he "began exhibiting violent tendencies at a young age." [ECF 31 at 68]. Brewer also states that "[t]rial counsel admits that the defense team did not interview Ms. Long, she provides the type of evidence the jury should have heard and there was no strategic or tactical reason for not conducting this investigation." (*Id.* at 68). Brewer argues that had the defense team interviewed Long, she would have testified that Brewer was not dangerous, that this incident was "out of character" for him, and she did not believe he intended to hurt her. (*Id.* at 68). This additional evidence would have had some mitigating value regarding the bad act.

The presented bad acts also included Brewer's assault on his father with a broomstick that caused his father to suffer brain damage. Trial counsel attempted to counter this evidence with Brewer's own testimony that was corroborated only with the testimony of his mother that Brewer was

protecting her from his father's attack. Brewer complains that trial counsel did not, but could have, questioned Brewer's mother "about the depth of violence in their home or in her relationship with her husband, or about the violence inflicted on Brent by his father." (*Id.* at 71). Brewer also identifies other witnesses that trial counsel could also have used to corroborate Brewer's testimony that included "chilling stories of unprovoked and unpredictable violence" by Brewer's father from his prior wives and children. (*Id.* at 72). Again, the absence of this mitigating evidence is alleged to have been due to trial counsel's failure to adequately investigate it.

The bad acts also included a 1989 arrest "in Naples, Florida, for possession of a concealed weapon – a knife found in a car in which he was the driver and the owner of the car was the passenger." (*Id.* at 69). This evidence was presented by the state through the testimony of the arresting officer, who could have, but did not, provide contextual evidence for the arrest that would have placed this incident "in an entirely different, far less sinister or aggravating context." (*Id.* at 70). Again, Brewer alleges that the failure to present this mitigating evidence was due to the failure of trial counsel to adequately investigate the incident, such as conducting no interview of the arresting officer who testified at the trial.

The bad acts also included the testimony of a fellow inmate at the county jail while awaiting trial where Brewer threatened to stab the inmate in the eye with a pencil. Trial counsel did not, but could have, presented evidence that it was the fellow inmate and not Brewer that started the argument, that Brewer remained calm and seated throughout the argument, and that "no one in the jail thought of Mr. Brewer as threatening and that he got along well with both the inmates and guards." (*Id.* at 70-71). Again, Brewer alleges that the failure to present this mitigating evidence was due to trial counsel's failure to adequately investigate the incident, such as not interviewing the fellow inmate who testified.

Each of the bad acts was presented by the prosecution to meet its burden to prove "beyond a reasonable doubt that there is a probability that [Brewer] would commit criminal acts of violence that would constitute a continuing threat to society." (State Clerk's Record at 612). Each of the items of omitted evidence, if true, would have had some mitigating value regarding the related bad acts. Brewer has presented evidence that trial counsel had no strategic reason for not investigating such bad acts and presenting such mitigating evidence. While it is not clear whether the alleged evidence is true or what the ultimate mitigating value of such evidence would have been, it appears that this claim is not plainly meritless. Further evidentiary development of this claim appears warranted in order to determine whether it has any merit.

The other two groups of claims that are the subject of Brewer's motion to stay these proceedings may be less likely to have merit. But because at least one of Brewer's claims appears to not be plainly meritless, it is not necessary to determine whether other claims are also not plainly meritless. If this recommendation is adopted and these proceedings are stayed for exhaustion, Brewer should avail himself of the opportunity to fully exhaust any available claim that he may have by presenting it to the state court, or attempting to do so, and seeking any needed evidentiary development there before returning to the federal court.

### D. Dilatory Intent

Respondent does not suggest any dilatory intent in the failure to exhaust any of these claims. Instead, she complains about the timing of the motion to stay these proceedings and asserts that it is made for the purpose of delay. [ECF 61, at 3-6]. In support of this assertion, respondent points to evidence that Brewer's current counsel obtained more than a year before the motion to stay was filed, and argues that an abusive delay would result from the timing of Brewer's motion for a stay, rather than

from the failure to exhaust itself. [ECF 61 at 5-6].

Brewer replies that respondent ignores binding circuit precedent that focuses on the timing of the failure to exhaust rather than the timing of the motion to stay. [ECF 62 at 1 (citing *Williams,* 602 F.3d at 309)]. Brewer also explains that he did not request a stay earlier because it would have been futile before the state court issued its decision in *Ex parte Ruiz,* 543 S.W.3d 805 (Tex. Crim. App. Nov. 9, 2016) (observing that the "consequences resulting from the poor performance" of habeas counsel "may highlight the need to revisit our holding in [*Ex parte Graves,* 70 S.W.3d 103 (Tex. Crim. App. 2002)]," but declining to reach the issue under the facts of that case). Brewer argued that after this state court opinion, "Petitioner's counsel reviewed the decision, assessed its impact on Mr. Brewer's case, and promptly filed the motion for a stay." [ECF 62 at 1].

Brewer filed his motion only three (3) days after the Supreme Court issued an opinion with language that casts some doubt upon the practice of finding a claim to be procedurally barred on independent and adequate state grounds even though the state court never made such a determination if, in the judgment of the federal court, the state court would likely find the claims to be procedurally barred under it's abuse-of-the-writ doctrine.

> The Fifth Circuit treats unexhausted claims as procedurally defaulted if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Bagwell v. Dretke,* 372 F.3d 748, 755 (2004) (internal quotation marks omitted); *cf. Coleman,* 501 U.S., at 735, 111 S.Ct. 2546, n. Relying on this doctrine, the District Court concluded that petitioner's federal claim was procedurally defaulted (even though a state court had never actually found it procedurally barred) because Texas law would likely bar a Texas court from deciding the claim on the merits if petitioner were to present it in a successive habeas petition. *Davila v. Stephens,* 2015 WL 1808689, *19–*20 (N.D.Tex., Apr. 21, 2015) (citing *Davila v. Stephens,* 2014 WL 5879879, *2 (N.D.Tex., Nov. 10, 2014)); *see also Davila v. Stephens,* 2014 WL 6057907, *2 (N.D.Tex., Nov. 10, 2014). Petitioner did not seek a certificate of appealability regarding that holding, and neither petitioner nor the State disputes in this Court that the claim was procedurally defaulted. Accordingly, we assume that it was procedurally defaulted for purposes of this case.

*Davila v. Davis,* 137 S. Ct. 2058, 2064 n.1 (June 26, 2017).

Even if the proper standard is whether dilatory intent is shown in the timing of the motion to stay rather than the failure to exhaust, respondent has not overcome Brewer's explanation to show that his real reason was an abusive dilatory tactic. Since the law in this area continues to develop and remain fluid, counsel's continued reevaluation appears reasonable. The requirements of federalism would be better served by allowing the state court to make its own determinations regarding the application of state procedural law, particularly when there is any doubt.

The undersigned finds that dilatory intent has not been shown.

## III.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that petitioner's motion to stay these proceedings [ECF 53] be GRANTED, and that the District Judge set reasonable time limits for the return to the state court and, if unsuccessful, to this Court.

It is the further RECOMMENDATION of the undersigned that the remaining motions [ECF 54, 57] be DENIED without prejudice as moot.

## IV.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 7, 2018.

                                                             _/s/ Lee Ann Reno_
                                                             LEE ANN RENO
                                                             UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).