**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

---

|  |  |  |
|---|---|---|
| | : | |
| **BRENT RAY BREWER** | : | |
| | : | CIVIL ACTION |
| Petitioner, | : | No. 2:15-CV-50-Z |
| v. | : | |
| | : | **THIS IS A CAPITAL CASE** |
| **LORIE DAVIS,** | : | |
| **Director, Criminal Institutions Division** | : | |
| **Texas Department of Criminal Justice** | : | |
| | : | |
| Respondent | : | |

---

**PETITIONER'S RENEWED MOTION
FOR DISCOVERY AND EVIDENTIARY HEARING**

PHILIP ALAN WISCHKAEMPER
TX Bar No.: 21802750
Law Office of Philip Wischkaemper
915 Texas Avenue
Lubbock, TX  79401
(806) 763-9900
miglit@aol.com

SHAWN NOLAN
PA Bar No.: 53565
PETER WALKER
TX Bar No.: 24075445
Federal Community Defender Office
  for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA  19106
(215) 928-0520
shawn_nolan@fd.org
peter_walker@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................................ii

I.  LEGAL STANDARDS ...........................................................................................................1

   A.  Evidentiary Hearings in Habeas Corpus Cases. .........................................................1

      1.  Section 2254(d) Does Not Bar an Evidentiary Hearing. ...................................3

      2.  Section 2254(e)(2) Does Not Bar an Evidentiary Hearing. ..............................5

   B.  Discovery in Habeas Corpus Cases. ...........................................................................8

II.  PETITIONER'S SPECIFIC REQUESTS FOR DISCOVERY AND AN
     EVIDENTIARY HEARING. ...............................................................................................10

   A.  Petitioner Requests an Evidentiary Hearing on Claim I. ..........................................10

   B.  Petitioner Requests an Evidentiary Hearing and Discovery on Claim II. .........................16

   C.  Petitioner Requests an Evidentiary Hearing on Claim IV and Cause to Excuse
      Any Procedural Default of the Claim. .......................................................................21

   D.  Petitioner Requests an Evidentiary Hearing on Claim V. .........................................28

   E.  Petitioner Requests an Evidentiary Hearing on Claim VII, a Hearing on Cause
      to Overcome Default of the Claim, and Discovery on the Suppressed Records
      at Issue. ......................................................................................................................32

III.  CONCLUSION ...................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alvarado v. Cockrell*, 35 F. App'x 386 (5th Cir. 2002) ................................................ 2

*Austin v. McKaskle*, 724 F.2d 1153 (5th Cir. 1984) ............................................... 2-3

*Balentine v. Stephens*, 2016 WL 1322435 (N.D. Tex. Apr. 1, 2016) ........................ 7

*Banks v. Dretke*, 540 U.S. 668 (2004) .................................................................. 34

*Barnett v. Roper*, 941 F. Supp. 2d 1099 (E.D. Mo. 2013) .................................. 7-8

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) ...................................... 6, 26

*Bracy v. Gramley*, 520 U.S. 899 (1997) ......................................................... 9, 35

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................. 33

*Braziel v. Stephens, No. 3:09-CV-1591-M*, 2014 WL 1494081 (N.D. Tex. Apr. 15, 2014) ...................... 7

*Brewer v. Davis,* 2018 WL 4608260 (N.D. Tex. Aug. 7, 2018) ................ 8, 23, 24, 25

*Brewer v. Davis,* 2018 WL 4585357 (N.D. Tex. 2018) ................................... 8, 25

*Brown v. Allen,* 344 U.S. 443 (1953) ................................................................... 1

*Brumfield v. Cain*, 135 S. Ct. 2269 (2015) .................................................. 26, 29

*Clark v. Johnson*, 202 F.3d 760 (5th Cir. 2000) ................................................ 10

*Cobb v. Thaler*, 682 F.3d 364 (5th Cir. 2012) ..................................................... 3

*Coleman v. Thompson*, 501 U.S. 722 (1991) ....................................................... 6

*Cristin v. Brennan*, 281 F.3d 404 (3d Cir. 2002) .......................................... 6, 34

*Cullen v. Pinholster*, 563 U.S. 170 (2011) .......................................................... 4

*Davis v. Lambert*, 388 F.3d 1052 (7th Cir. 2004) ................................................ 2

*Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) .......................................... 6, 26

*Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) ................................................. 6

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ....................... 33

*Garcia v. Stephens,* 2014 WL 1494024 (N.D. Tex. Apr. 15, 2014) ........................ 7

*Guy v. Cockrell*, 343 F.3d 348 (5th Cir. 2003) .................................................... 2

*Hall v. Quarterman*, 534 F.3d 365 (5th Cir. 2008) ......................................... 1, 2

*Harrington v. Richter*, 562 U.S. 86 (2011) ........................................................................... 4

*Harris v. Nelson*, 394 U.S. 286 (1969) ................................................................................. 9

*Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226 (11th Cir. 2014) ............................. 5, 34

*Herman v. Claudy*, 350 U.S. 116 (1956) ............................................................................... 2

*James v. Taylor*, 2014 WL 4104767 (M.D. Tenn. Aug. 18, 2014) ............................................ 7

*Johnson v. Williams*, 568 U.S. 289 (2013) ........................................................................... 26

*Keeney v. Tamayo-Reyes,* 504 U.S. 1 (1992) ......................................................................... 1

*Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003) ................................................................... 26

*Kyles v. Whitley*, 514 U.S. 419 (1995) ................................................................................ 10

*Lockett v. Ohio*, 438 U.S. 586 (1978) ................................................................................. 10

*Lockyer v. Andrade*, 538 U.S. 63 (2003) .............................................................................. 3

*Maples v. Thomas*, 132 S. Ct. 912 (2012) ............................................................................. 6

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................................... 6

*Murphy v. Johnson*, 205 F.3d 809 (5th Cir. 2000) ................................................................. 9

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) ...................................................................... 3

*Palmer v. Ashe*, 342 U.S. 134 (1951) ................................................................................... 2

*Payne v. Bell*, 89 F. Supp. 2d 967 (W.D. Tenn. 2000) ............................................................ 9

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................................................... 4

*Rhines v. Weber*, 544 U.S. 269 (2005) ................................................................................ 34

*Richards v. Quarterman*, 566 F.3d 553 (5th Cir. 2009) .......................................................... 1

*Row v. Beauclair,* 2015 WL 1481416 (D. Idaho Mar. 31, 2015) ................................................ 7

*Sasser v. Hobbs*, 735 F.3d 833 (8th Cir. 2013) ...................................................................... 7

*Schriro v. Landrigan*, 550 U.S. 465 (2007) .................................................................... *passim*

*Sibley v. Culliver*, 377 F.3d 1196 (11th Cir. 2004) ............................................................ 5, 6, 34

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................................ 10, 11

*Townsend v. Sain*, 372 U.S. 293 (1963) ............................................................................. 1, 2

*Trevino v. Thaler*, 133 S. Ct. 1911 (2013) ............................................................................ 6

*Wessinger v. Cain, No. 04-637,* 2015 WL 4527245 (M.D. La. July 27, 2015) .............................................. 7

*Williams v. Taylor*, 529 U.S. 420 (2000) ........................................................................ 5, 33

*Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) ........................................................................ 6

*Woods v. Thaler*, 399 F. App'x 884 (5th Cir. 2010) .............................................................. 5

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ............................................................ 10

**State Cases**

*Brewer v. State,* 2011 WL 5881612 (Tex. Crim. App. Nov. 23, 2011) .................................. 11, 12, 13, 14

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010) .......................................................... 11

*Ex Parte Brewer,* WL 542044 (Tex. Crim. App. Oct. 23, 2019) .............................................. 1

**Federal Statutes**

28 U.S.C. § 2254 ........................................................................................................ *passim*

**State Statutes**

Tex. Code Crim. Proc. art. 11.071 §§ 8(a), 9(a) ..................................................................... 28

**Other**

Federal Rule of Civil Procedure 26(b) ............................................................................. 8, 35

R. Governing § 2254 Proceedings 6 ............................................................................. 8, 9, 35

R. Governing § 2254 Proceedings 8 ..................................................................................... 2

Tex. R. 7.2 ...................................................................................................................... 1

Petitioner Brent Brewer renews his motion for discovery and an evidentiary hearing in this matter[1] and in support states:

Pending before the Court is Mr. Brewer's Amended Petition for Writ of Habeas Corpus by a Prisoner in State Custody Pursuant to 28 U.S.C. § 2254 *et seq. See* Doc. 31 (Am. Pet.); Doc. 40 (Answer); Doc. 48 (Reply); Doc. 49 (Supplement); Doc. 52 (Supp. Answer).

This Court should allow additional factual development because Mr. Brewer has made allegations, which if proven, would entitle him to relief. In state court, Mr. Brewer was given no discovery and a limited hearing on a single claim. His subsequent state court application for writ of habeas corpus presenting the claims discussed below was recently dismissed. *See Ex Parte Brewer,* No. WR-46,587-03, 2019 WL 542044 (Tex. Crim. App. Oct. 23, 2019). Mr. Brewer requests evidentiary development targeted at proving strong claims where extensive and disputed extra-record evidence is at issue. As laid out below, this includes: an evidentiary hearing on five claims (Claims I, II, IV, V, VII); a hearing on the issue of state habeas counsel's ineffectiveness as cause to overcome an asserted default in Claim IV and VII; and discovery in support of two claims of prosecutorial misconduct (II and VII).

## I.   LEGAL STANDARDS

### A.   Evidentiary Hearings in Habeas Corpus Cases.

"[T]he decision to grant an evidentiary hearing [is] generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Brown v. Allen*, 344 U.S. 443, 463–464 (1953) and *Townsend v. Sain*, 372 U.S. 293, 313 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)); *Richards v. Quarterman*, 566 F.3d 553, 562-63 (5th Cir. 2009);

---

[1] Petitioner consolidates herein his brief in support of the motion. *See* N.D. Tex. R. 7.2.

*Hall v.Quarterman*, 534 F.3d 365, 368-69 (5th Cir. 2008). Rule 8 of the Rules Governing § 2254 Proceedings ("Habeas Rules") requires the court "to review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted." Habeas Rule 8(a).

A hearing is mandated when (1) a petitioner has pled material facts that could make out a claim; (2) those facts are subject to genuine dispute; and (3) the facts have never before received evidentiary development in any full or fair hearing. The Supreme Court has instructed a hearing should be held whenever "such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.

A hearing is especially necessary to resolve disputed, genuine issues of material fact, such as proffered affidavits regarding ineffectiveness. *Guy v. Cockrell*, 343 F.3d 348, 353 & n.4 (5th Cir. 2003) (reversing denial of habeas and remanding for a full hearing); *Alvarado v. Cockrell*, 35 F. App'x 386 (5th Cir. 2002) (same); *see also Herman v. Claudy*, 350 U.S. 116, 119 (1956) (a court may not reject the claim on the basis of a respondent's answer denying the allegations or on the basis of "speculation or surmise"); *Palmer v. Ashe*, 342 U.S. 134, 137 (1951). Finally, federal habeas law *mandates* an evidentiary hearing where "the merits of the factual dispute were not resolved in the state hearing." *Townsend*, 372 U.S. at 313;[2] *Hall*, 534 F.3d at 368; *see, e.g., Austin v. McKaskle,* 724 F.2d 1153, 1156 (5th

---

[2] Under *Townsend*, a federal evidentiary hearing is required if any of the following six factors are met: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; and (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing. *See id.* at 313. The *Townsend* factors remain good law on when a district court *must* hold an evidentiary hearing, except for the exception carved out by § 2254(e)(2), which is discussed below. *See Schriro*, 550 U.S. at 473 (noting "the basic [pre- AEDPA] rule has not changed");

Cir. 1984).

As discussed in greater detail below, Mr. Brewer is entitled to an evidentiary hearing to establish cause for state post-conviction counsel's deficient performance pursuant to *Martinez*. Indeed, this Court, after careful consideration of Mr. Brewer's *Motion for Stay of Federal Habeas Proceedings* [ECF 53], his *Motion for Evidentiary Hearing and Discovery* [ECF 54] and supporting documentation, concluded that "Brewer has produced evidence of deficient performance by state habeas counsel…[and] "[h]as made more than a "bald assertion" of ineffective assistance by state habeas counsel, and has shown the kind of "reasonable excuse, supported by evidence" that other courts have found to show good cause to justify a petitioner's failure to exhaust." *Findings, Conclusions and Recommendation to Grant Petitioner's Motion to Stay and to Stay Proceedings* [ECF 67], at 9.

### 1.    Section 2254(d) Does Not Bar an Evidentiary Hearing.

First, this Court may—and should—address the merits of this Petition *de novo* before turning to the § 2254(d) analysis. *See Lockyer v. Andrade*, 538 U.S. 63, 71(2003) (giving courts discretion to choose "methodology" of addressing merits and § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012) ("Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights."); *Neal v. Puckett*, 286 F.3d 230, 244 (5th Cir. 2002) (en banc) (deciding Strickland prejudice analysis de novo before turning to § 2254(d) question). Addressing the merits of the petition after allowing evidentiary development and before making a § 2254(d) determination is appropriate under AEDPA. Section 2254(a) gives this court jurisdiction to determine whether Mr. Brewer is is serving his death sentence "in violation of the Constitution."  28 U.S.C. § 2254(a).

---

*Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004) (holding pre- AEDPA standards for evidentiary hearings still apply).

This is not a waste of judicial resources: clarification of the law posed by Mr. Brewer's petition and deterrence of future state actors in similar cases militates in favor of resolving the merits first. Examining the constitutional errors in Mr. Brewer's case—trial counsel's ineffectiveness in resentencing, the reliance on unreliable and discredited expert evidence, the suppression of favorable evidence by the prosecution—serves habeas's purpose of deterring "extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation and quotation marks omitted); *cf. Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (giving reasons to decide constitutional merits before deciding whether right is "clearly established).

Therefore, it is wholly appropriate under these circumstances to rule on the constitutional errors that plagued Mr. Brewer's trial before proceeding to whether relief may be granted.

Second, as discussed in Petitioner's Reply, the State has wrongly asserted in these proceedings that *Cullen v. Pinholster*, 563 U.S. 170 (2011), means that "new evidence cannot be considered on federal habeas review." Answer at 24. *Pinholster* only excludes new factual allegations for the purpose of "review under § 2254(d)(1)." 563 U.S. at 181. But *Pinholster* does not "bar" evidentiary development of a claim not subject to review under § 2254(d). *Contra* Answer at 23 ("Evidence Barred"). "If the federal habeas court finds that the state-court decision fails (d)'s test (or if (d) does not apply), then a[] hearing [under § 2254(e)(2)] may be needed." *Pinholster*, 563 U.S. at 205 (Breyer, J., concurring); *id.* at 185 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief.").

Relatedly, as detailed in Petitioner's Amended Petition and Reply, § 2254(d) does not bar relief on any claim. Besides arguments about the objective unreasonableness of the state court's adjudication under § 2254(d)(1), Mr. Brewer has argued the state court's failure to grant an evidentiary hearing on all but one of Mr. Brewer's well-pleaded claims in state court was an unreasonable determination of the facts under § 2254(d)(2), evident solely from state court record.

Reply at 1-8. Having established that this state court ruling is an unreasonable determination of the facts under § 2254(d)(2) with respect to Claims II, IV, V, and VII of the Amended Petition, the state court decision is not entitled to AEDPA deference, and neither *Pinholster* nor § 2254(d) prevent this Court from further developing the record through an evidentiary hearing when properly considering these claims under *de novo* review.

## 2.      Section 2254(e)(2) Does Not Bar an Evidentiary Hearing.

AEDPA limits a court's ability to hold an evidentiary hearing on a petitioner's claims when a petitioner "has failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Mr. Brewer's request for an evidentiary hearing is not limited by that provision for at least three reasons.

First, as detailed above, Mr. Brewer did not fail to develop the factual basis of his claims in state court—rather, the state court prevented the factual development of these claims by rejecting Mr. Brewer's request for an evidentiary hearing based on its unreasonable determination of the facts underlying this request. In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court rejected an argument that the "failed to develop" language in the opening clause of § 2254(e)(2) serves to bar federal evidentiary hearings any time facts were not developed in state court. *Id.* at 431; *see also Woods v. Thaler*, 399 F. App'x 884, 898 (5th Cir. 2010) ("Where the failure to develop the factual basis of the claim in state court is not due to the petitioner's actions, the district court retains discretion over the decision to grant an evidentiary hearing."). Mr. Brewer diligently sought an evidentiary hearing in state court, but the state court unreasonably denied him an evidentiary hearing. Because the failure to develop the factual basis of his claims was not due to his own actions, § 2254(e)(2) does not prevent this Court from granting Mr. Brewer an evidentiary hearing on Claims II through VIII.

Second, § 2254(e)(2) applies only to hearings on *claims*, not on procedural issues. With respect to a hearing on Mr. Brewer's ability to demonstrate cause and prejudice to overcome any

procedural default, § 2254(e)(2) is inapplicable. *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1231-32 (11th Cir. 2014); *see also Sibley v. Culliver*, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) ("The term 'claim' [in § 2254(e)(2)] appears to refer to the substantive claim for relief upon which the petition for habeas corpus is based."); *accord Cristin v. Brennan*, 281 F.3d 404, 412-13 (3d Cir. 2002). Thus, a petitioner does not "fail to develop" the factual basis of his allegations of state habeas counsel's ineffectiveness under *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). *See Detrich v. Ryan*, 740 F.3d 1237, 1247 (9th Cir. 2013) (en banc) ("Evidentiary hearings to develop the factual basis of a 'claim' are ordinarily governed by 28 U.S.C. § 2254(e)(2). But . . . a prisoner making a Martinez motion is not asserting a 'claim' for relief but instead seeking, on an equitable basis, to excuse a procedural default."); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc) (same). The practical effect of denial of a hearing would be to render *Martinez* "a dead letter." *Detrich*, 740 F.3d at 1247.

Finally, § 2254(e)(2) does not pose an impediment for a hearing on Petitioner's defaulted trial counsel ineffectiveness claims either: "if the district court determines that [the habeas petitioner] has established cause and prejudice for his procedural default, it should proceed to conduct an evidentiary hearing on any claim for which cause and prejudice exists." *Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000). A claimant's showing of cause likewise establishes that the claimant did not "fail to develop" the underlying factual basis of the claim for purposes of § 2254(e)(2). *Id*; *see also Wilson v. Beard*, 426 F.3d 653, 665 (3d Cir. 2005) ("[T]he question whether a claim is procedurally defaulted and whether § 2254(e)(2) bars an evidentiary hearing related to that claim are analytically linked.").

Until *Martinez* and *Trevino*, "fault" on the part of a petitioner's state habeas counsel was ordinarily attributable to the petitioner himself. *See Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) ("[B]ecause the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the

6

principal bears the risk of negligent conduct on the part of his agent."). In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court held that an attorney's failure to raise a claim in post-conviction proceedings could not excuse the procedural default of his claim. *Id.* at 752-54.

But in *Martinez* and *Trevino*, the Court created an equitable exception to *Coleman*'s general rule. Because of the bedrock importance of vindicating the right to effective trial counsel, the *Martinez* Court recognized an exception to the *Coleman* attorney-as-agent rule. It follows that the ineffectiveness of state habeas counsel cannot be the reason a petitioner "failed to develop" a trial ineffectiveness claim. It constitutes an objective factor external to, and hence not attributable to, a habeas petitioner.

Numerous Texas district courts, including this Court, have already ordered or held evidentiary hearings on *Martinez* cause and the substantiality of petitioners' trial ineffectiveness claims. *See Balentine v. Stephens*, No. 2:03-cv-00039-J-BB, 2016 WL 1322435 (N.D. Tex. Apr. 1, 2016) (ordering a hearing on cause to overcome procedural default of ineffectiveness claim); *Washington v. Davis*, No. 4:07-cv-00721 (S.D. Tex. Nov. 29, 2018) (same); *Garcia v. Stephens*, No. 3:06-CV- 2185-M, 2014 WL 1494024 (N.D. Tex. Apr. 15, 2014); *Braziel v. Stephens*, No. 3:09-CV-1591-M, 2014 WL 1494081 (N.D. Tex. Apr. 15, 2014). In similar circumstances, numerous federal courts around the country have also ordered evidentiary hearings or remanded for a district court determination on whether to hold an evidentiary hearing. *See, e.g., Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) ("[T]he district court is authorized under 28 U.S.C. § 2254(e)(2) and required under *Trevino* to 'hold an evidentiary hearing on the claim[s].'") (quoting *Williams*, 529 U.S. at 437)); *Wessinger v. Cain*, No. 04-637-JJB-SCR, 2015 WL 4527245 (M.D. La. July 27, 2015) (finding both trial and initial post-conviction counsel ineffective following evidentiary hearing, and granting habeas relief) (on appeal); *Row v. Beauclair*, No. 1:98-cv-00240-BLW, 2015 WL 1481416, at *14 (D. Idaho Mar. 31, 2015); *James v. Taylor*, No. 3:11-0735, 2014 WL 4104767 (M.D. Tenn. Aug. 18, 2014) (finding both trial and initial

post-conviction counsel ineffective following evidentiary hearing, and accordingly granting habeas relief); *Barnett v. Roper*, 941 F. Supp. 2d 1099, 1121 (E.D. Mo. 2013) (granting hearing on defaulted ineffective assistance of trial counsel claim via Martinez issue first raised on Fed. R. Civ. P. 59(e) motion).

In finding that Mr. Brewer's claim regarding post-conviction counsel's failure to challenge trial counsel's deficient performance pertaining to prior bad acts colorable, this Court held that "[E]ach of the items of omitted evidence, if true, would have had some mitigating value regarding bad acts. Brewer has presented evidence that trial counsel had no strategic reason for not investigating such bad acts and presenting such mitigating evidence . . . . Further evidentiary development of this claim appears warranted in order to determine whether it has any merit." *Brewer v. Davis,* No. 2:15-cv-50-D, 2018 WL 4608260, at *6 (N.D. Tex. Aug. 7, 2018) (Reno, M.J.) [ECF 67].

The District Court, in adopting the findings of this Court, stated "Brewer's federal habeas counsel has indeed presented 'chilling stories of unprovoked and unpredictable violence' by Brewer's father against his ex-wife Pat and their daughter, Corrie Brewer." *Brewer v. Davis*, No. 2:15-cv-50-D-BR, 2018 WL 4585357, at *2 (N.D. Tex. 2018) [ECF 76]. The District Court found Brewer's allegations were "[p]otential corroboration of the pattern of abuse inflicted by Albert that resulted in Brewer's attack on him." *Id*.; *see also Id.* at *3 ("The recommendation also referenced affidavits from Brewer's trial counsel admitting to the failure to conduct an adequate investigation into these bad acts without any strategic reason.").

Under these standards, this Court should grant Petitioner's specific requests for an evidentiary hearing detailed below.

### B.      Discovery in Habeas Corpus Cases.

Mr. Brewer requests permission to conduct discovery pursuant to Federal Rule of Civil

Procedure 26(b), which provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Under Habeas Rule 6, a habeas petitioner is entitled to conduct discovery on a showing of "good cause." A petitioner establishes "good cause" when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).[3]

"[I]t is the duty of the courts" to grant discovery "to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909 (quoting *Harris*, 394 U.S. at 300). The Supreme Court has set out the straightforward framework for considering a petitioner's discovery requests. A court should first decide whether petitioner has alleged the elements of a claim he wishes to prove, then decide whether he has made "specific allegations" that support the particular request. If the petitioner has met these requirements establishing "good cause," the court should authorize discovery. *Id.* at 909; *Murphy v. Johnson*, 205 F.3d 809, 813-14 (5th Cir. 2000).

Since the purpose of post-conviction discovery "is to ensure that the facts underlying a [habeas] claim are adequately developed," a court must allow discovery when "a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief." *Harris*, 394 U.S. at 291. A court may not deny a petitioner's discovery motion "if there is a sound basis for concluding that the requested discovery might allow him to demonstrate" his entitlement to relief. *Id.*[4]

---

[3] *Harris* led to the adoption of the Habeas Rules. In particular, the discovery provisions of Rule 6 are intended to be "consistent with *Harris*." Advisory Committee Note to Rule 6; *Bracy*, 520 U.S. at 909.

[4] A habeas "[p]etitioner need not show that the additional discovery would definitely lead to relief. Rather, he need only show good cause that evidence sought would lead to relevant evidence regarding his petition." *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000).

In addition, "[t]he very nature of [habeas proceedings] demands that [they] be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris*, 394 U.S. at 291. Capital cases especially underscore the need for heightened procedural safeguards because the sentence is final and irreversible. *See, e.g.,* K*yles v. Whitley,* 514 U.S. 419, 422 (1995) (The "duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case."); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (discussing need for heightened reliability in capital proceedings); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). The requirement of enhanced reliability has been extended to all aspects of the proceedings leading to a death sentence, including habeas review. *See, e.g.*, *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) ("[I]n capital cases, doubts as to whether a [certificate of appealability" should issue must be resolved in favor of the petitioner."); *Douglas v. Workman*, 560 F.3d 1156, 1194 (10th Cir. 2009). Because of the constitutionally heightened procedural safeguards, Mr. Brewer is entitled to discovery to prove his claims.

## II.   PETITIONER'S SPECIFIC REQUESTS FOR DISCOVERY AND AN EVIDENTIARY HEARING.

### A.   Petitioner Requests an Evidentiary Hearing on Claim I.

In Claim I of the Amended Petition (Doc. 31), Mr. Brewer demonstrated that trial counsel were ineffective under the Sixth and Fourteenth Amendments and *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to effectively challenge the prosecution's now-discredited "expert" Dr. Richard Coons, which resulted in the admission of unreliable, unscientific, and highly prejudicial testimony concerning Mr. Brewer's alleged future dangerousness. Am. Pet. at 11-36; Reply at 8-19. Trial counsel were ineffective for failing to object to the admission of Dr. Coons's testimony and failing to investigate, develop, or present an alternative expert opinion on petitioner's future dangerousness. *Id.* at 11-29. The resulting admission of Dr. Coons's unscientific, unreliable testimony violated Mr. Brewer's rights to due process and a reliable capital sentencing under the

Fourteenth and Eighth Amendments. *Id.* at 29-33.

Trial counsel were also ineffective for failing to investigate and cross-examine Dr. Coons on the basis of his scientifically unreliable opinion, and for failing to investigate Dr. Coon's credentials, about which the prosecution elicited misleading and false evidence in violation of due process. *Id.* at 33-36. *See* A163[5] (Decl. Anthony Odiorne, Esquire*,* at ¶ 17) ("During the 2012 state post-conviction proceedings, I acknowledged that I did not investigate the validity of many of the claims of professional associations with and work on behalf of numerous governmental agencies contained in Dr. Coons' resume and testimony…I had an obligation to fully investigate the credentials of an expert such as Dr. Coons."). *See also* A168 (Decl. Investigator Robert Cowie, at ¶13) ("I did not conduct any investigation into Dr. Richard Coons, his credentials or any other aspect of his background.").

At trial, Mr. Anthony Odiorne, Esq., was "responsible for the cross examination of the prosecution's future dangerousness witness, Dr. Coons; [and] the 702/705 challenge to the admissibility of his testimony[.]" A161 (Odiorne Decl. at ¶10). Indeed, Mr. Odiorne admits that he "[d]id not lodge a proper objection at the conclusion of the 702/704 hearing to the admissibility of Dr. Coons' testimony. I had no strategic or tactical reason for not doing so." A164 (*Id.* at ¶20). As a result, this error, which entitled Mr. Brewer to relief on direct appeal, *see Coble v. State*, 330 S.W.3d 253, 270-80 (Tex. Crim. App. 2010)**,** the Texas Court of Criminal Appeals refused to consider this claim. *Brewer v. State*, No. AP-76,378, 2011 WL 5881612, at *6-8 (Tex. Crim. App. Nov. 23, 2011).

Mr. Odiorne also acknowledged that prior to this case, he "[h]ad never presented or cross-examined an expert on future dangerousness" and that he failed to secure "a copy of the materials

---

[5] All Appendix citations are sequentially Bates stamped. *See* App'x, Doc. 19-1 to 19-5 (A1-A210); Supp. App'x, Doc. 29 (A211-A484); *see also* App'x to Mot. Supp. Record, Doc. 49-1 (sequential document numbers for supplemental evidence accepted for consideration by the court).

that had been provided to Dr. Coons by the State in preparation of his testimony against Mr. Brewer" for use during his cross-examination. A63-64 (Odiorne Dec. at ¶ 18). Mr. Odiorne further admits that he "had no strategic or tactical reason for not doing so" and that he also failed "to issue a subpoena duces tecum for the records[.]" *Id.*

State habeas counsel presented the testimony of trial counsel, related only to this issue, and Dr. Richard Coons at an evidentiary hearing in state proceedings. However, as detailed in Petitioner's Supplement to the Amended Petition, attached to the concurrently filed motion for leave to file a supplement, Dr. Coons has recently made public statements contrary to his testimony at Mr. Brewer's trial and state habeas proceedings. When asked by a reporter for *The Atlantic* whether Texas's special question on future dangerousness was "asking the right question," Dr. Coons stated, "Maybe not. There is no credible way of evaluating the situation to a high degree." *See* App'x to Supp. to Am. Pet. (Abbie VanSickle, "A Deadly Question: Have juries sentenced hundreds of people to death by trying to predict the unpredictable?" *The Atlantic*, Nov. 19, 2016) [ECF 56-1 at 4-14].

Dr. Coons further opined that the predictive power of the future dangerousness questions was "like saying, 'Which of these hummingbirds are going to go to Panama for the winter and which are going to Costa Rica? You can't know.'" *Id.* These statements directly contradict his testimony during the state habeas hearing, where he defended his ability to offer an opinion that Mr. Brewer was "more likely than not" a future danger. *See* 2 SHH 224; 23 RR 204. Dr. Coons's change of heart strongly supports Mr. Brewer's claim that Dr. Coons's testimony violated his right to due process, and must be tested at a hearing.

Furthermore, Dr. John Edens, retained by trial counsel for Mr. Brewer's 2009 resentencing, and Dr. Mark Cunningham, who evaluated Mr. Brewer for his first sentencing in 1996, have not been given the chance to testify in habeas proceedings in support of their proffered affidavits.

12

Dr. Edens's testimony would further support Petitioner's claim that Dr. Coons's testimony failed to satisfy standards for the admission of reliable expert testimony, and that Petitioner was prejudiced by trial counsel's failure to challenge the testimony's admissibility. He would explain how Dr. Coons's method is "a case study in how not to conduct a scientifically informed evaluation of the likelihood that a capital defendant will engage in acts of criminal violence if not given a death sentence" because it "ignores or dismisses a number of relevant scientific findings" regarding what is known about violence in prison and instead "focus[es] on . . . [Dr. Coons's] own idiosyncratic experiences as a forensic mental health examiner and intuitive interpretations of anecdotal information." A4 (Aff. Dr. Edens Concerning Resentencing, July 9, 2012). His testimony would also explain how jurors are unduly influenced by clinical opinion testimony such as Dr. Coons, particularly in capital cases.  *Id.*

Dr. Edens's testimony would also establish that trial counsel only asked him to rebut Dr. Coons's conclusions, rather than form his own opinion of Mr. Brewer's future dangerousness based on his own valid risk assessment. A10. Dr. Edens would testify that counsel only contacted him a "few weeks prior to the re-sentencing hearing in 2009" and only "provided [] basic facts concerning Mr. Brewer's case." *Id.* Dr. Edens states that he "was not asked by defense counsel to testify as to the relevance of Mr. Brewer's disciplinary history as a risk or protective factor regarding his likelihood of future violent acts though I could have addressed this issue for the jury if requested." *Id.* He recalls having only "one substantive telephone conversation with defense counsel prior to my arrival in Canyon, and I then further discussed the case and my work in the field of risk assessment with one of the attorneys the night before I testified."  *Id.*

Dr. Edens conducted an assessment of Mr. Brewer in state habeas "using criteria that have been demonstrated to be valid indicators of violence risk" and found that "[t]he accumulated evidence would suggest a very low likelihood that someone such as Mr. Brewer will engage in

13

criminal acts of violence in the future if he is sentenced to life." A14 (Dr. Edens Aff.). This

conclusion is based on factors such as "an absence of significant prison violence over an extensive

period of incarceration," Mr. Brewer's "age at time of re-sentencing (39)," and "educational

attainment." *Id.*

Like Dr. Edens, Dr. Cunningham was also available for consultation and testimony at Mr.

Brewer's 2009 resentencing. A457 (Decl. Dr. Cunningham, Dec. 7, 2015). Dr. Cunningham

concludes:

> Had I or another qualified expert in violence risk assessment for prison been retained
> and called by the defense, the jury would have learned that the seriousness of the
> offense, including capital murder, is not predictive of prison violence. The jury would
> have learned that age (inversely) is one of the most well-validated and powerful
> predictors of prison misconduct and violence. Thus, at age 39, the probability of Mr.
> Brewer committing acts of violence, something he had not done in the past 19 years
> of imprisonment, was both extraordinarily remote and would have continued to
> decline with age. Other factors, such as Mr. Brewer's achieving a GED high school
> diploma, also correlate very favorably with lower rates of prison violence and
> misconduct. Moreover, the fact that he maintains contact with family members and
> others is another protective factor adding to the improbability that he will become a
> future danger in prison.

*Id.* at 31.

Dr. Cunningham's earlier 1996 report from Mr. Brewer's first sentencing hearing, in the

possession of trial counsel at the 2009 resentencing, also contained relevant information indicating

that an opinion based on a scientifically valid risk assessment would be helpful to Mr. Brewer's

defense. A35-A81 (Doc. 19-2). In this report, Dr. Cunningham concluded:

> The probability that Brent would engage in future acts of criminal violence that would
> constitute a continuing threat to society while in prison is considered to be quite
> low . . . . Further, this probability is substantially less than represented by inmates
> systemwide in the Texas prison system. Brent would not, then, be expected to be a
> disproportionate risk of violence in prison.

A81. At an evidentiary hearing, Drs. Edens and Cunningham would confirm that neither was

contacted by trial counsel for consultation and preparation of testimony on such a crucial inquiry.

14

Mr. Odiorne will testify, consistent with his declaration, that "we had no strategic or tactical reason" for not hiring an expert "to testify at the 702/705 hearing as to why Dr. Coons' methodology was not science and should not be allowed before the jury." A164 (Decl. Odiorne, dated July 30, 2015, at ¶ 19.

In addition to Mr. Anthony Odiorne, lead counsel Ray Keith should also testify at an evidentiary hearing in light of the new information offered by Drs. Coons, Eden, and Cunningham. Petitioner has detailed how their conduct in failing to consult with Dr. Edens or Dr. Cunningham was unreasonable under *Strickland*. *See* Am. Pet. at 11-29, 33-36. The State responds that trial counsel acted strategically and reasonably.  Answer at 32-52.  Petitioner has refuted the State's arguments by demonstrating that trial counsel's stated strategic reasons are objectively unreasonable. Reply at 14-17. An evidentiary hearing is appropriate if the Court believes that there are still unresolved issues of material fact regarding trial counsel's strategic decisions concerning their failure to properly challenge the testimony of Dr. Coons and consult with Dr. Eden and Dr. Cunningham.

Sections 2254(d) & (e) do not present any bar to granting an evidentiary hearing on this claim. *See* Reply at 11-14. The state court decision is due no AEDPA deference under Section 2254(d) because the state court applied a rule contrary to and an unreasonable application of *Strickland*.[6] Under *de novo* review, this Court should grant an evidentiary hearing.

Finally, Section 2254(e) does not bar this Court from granting an evidentiary hearing either. First, Mr. Brewer has been diligent in developing evidence of Dr. Coons's record as a future dangerousness expert. Because Mr. Brewer has not "failed to develop the factual basis of" the

---

[6] As detailed in Petitioner's Reply, the state court decision is also due no deference because it was an unreasonable application of *Strickland* based on an unreasonably determination of the facts. *See* Reply at 13-14.

Coons claims, § 2254(e)(2) does not bar a hearing. Second, with respect to other testimony, state habeas counsel's failure to properly develop the claim of trial counsel's ineffectiveness constitutes cause excusing the development of these facts in state habeas court, for the reasons stated *supra* in Section I.A.2. State habeas counsel unreasonably failed to investigate, develop, or make factual allegations related to Dr. Cunningham's extensive prior role in Mr. Brewer's post-conviction proceedings following his first trial. This failure was not attributable to Mr. Brewer. Mr. Brewer should be granted a hearing to develop the record with respect to state habeas counsel's ineffectiveness as well as the merits of his underlying claim of trial counsel's ineffectiveness. *See supra* Section I.A.2.

The witnesses Mr. Brewer would like to present to this Court regarding this claim are:

- Dr. Richard Coons, "expert" on future dangerousness for the State;
- Dr. Mark Cunningham, expert who evaluated Mr. Brewer at his first sentencing in 1996;
- Dr. John Edens, expert retained by trial counsel for Mr. Brewer's 2009 resentencing;
- Mr. Anthony Odiorne, trial counsel;
- Mr. Ray Keith, trial counsel;
- Ms. Hilary Sheard, post-conviction counsel; and
- Mr. Richard Wardroup, post-conviction counsel.

Mr. Brewer respectfully requests the opportunity to prove the facts proffered in support of this claim through these witnesses' testimony in order to further establish that he is entitled to relief.

## B.     Petitioner Requests an Evidentiary Hearing and Discovery on Claim II.

In this claim, Mr. Brewer alleges that the admission of Dr. Erdmann's 1991 trial testimony during his 2009 retrial violated his right to confrontation and that trial counsel rendered ineffective assistance by failing to cross-examine Dr. Natarajan, who testified from Dr. Erdmann's report, with the wealth of available evidence, including Dr. Erdmann's criminal convictions for perjury and falsifying autopsy reports. Much of Dr. Erdmann's misconduct occurred immediately prior to and shortly after his autopsy of the victim in this case. Indeed, in this case he issued a suspect second

report concerning toxicology after losing his original autopsy report.

Because of trial counsel's ineffectiveness, Dr. Natarajan was not asked about his knowledge of Dr. Erdmann's history of falsifying autopsy reports, committing perjury, illegally selling harvested organs, losing body parts, tailoring his testimony to fit the prosecution's theory of the case, and billing for autopsies he had not actually performed.

Dr. Erdmann's misdeeds began well before Mr. Brewer's 1991 trial and were well known to the prosecuting attorney—who prosecuted Dr. Erdmann—at the time of Mr. Brewer's 2009 re-trial. *See* Am. Pet. at 38-44. Indeed, in 1997, when Mr. Brewer challenged his 1991 conviction and sentence of death in state habeas proceedings, Randall County District Attorney James Farren filed a motion to withdraw from the case because of a conflict of interest. In this motion, which was subsequently granted by the state habeas court, Mr. Farren stated that "it would be virtually impossible for the undersigned to serve in good faith as the prosecutor in this writ proceeding because, in order to do so, the undersigned would have to vouch for the reliability and credibility of the same Dr. Erdmann, who the undersigned has prosecuted for aggravated perjury and tampering with evidence." A88-A89 (Farren Mot. Withdraw). Yet, twelve years later, he relied on Erdmann's autopsy report, through the testimony of a different pathologist, to help convict Mr. Brewer.

One of Mr. Brewer's trial attorneys, Mr. Anthony Odiorne, Esq., reports that the defense team never bothered to read this motion, that it was readily available in the court file and that it would have been very helpful to the defense:

> This motion was apparently a part of Mr. Brewer's court file and a document that we should have seen and reviewed as part of our preparation and development of Mr. Brewer's 2009 defense.

> "[w]e would have been able to use this motion to challenge the integrity of the State's presentation in this case. We would have been able to argue to the jury that the State knowingly presented to it the work of Dr. Erdman who it knew was unreliable, tainted and arguably false.

> We would have been able to tell the jury that they should not believe any of the

17

autopsy results reported to them by Dr. Natarajan because all he had to go on was Erdman's results and that the prosecutor in this case himself had withdrawn from this very case years earlier because he could not do what he wants you, the jury to do: find credible and reliable the work of Dr. Erdmann.

A283 (Second Decl. of Anthony Odiorne, Esquire, dated November 30, 2015, at ¶¶ 9-12). [7]

The State also went to great lengths to suppress the story of Dr. Erdmann's misdeeds from rocking the boat on the many convictions that were predicated upon his perjured testimony and reports about autopsies he never conducted. Two lawyers and two law enforcement officers who brought this issue to the forefront were indicted by then District Attorney Randall Sherrod and Travis Ware. The officers testified about witnessing improprieties during autopsies conducted by Dr. Erdmann and the attorneys had presented this evidence in defense of their client. These indictments were a blatant attempt at prosecutorial intimidation to protect Dr. Erdmann and were ultimately quashed. *See* Am. Pet. at 43-44; A256-57 (Opinion, *Farmer v. Sherrod*).

Mr. Brewer seeks permission to present to this Court the testimony of a number of individuals who led the investigation into Dr. Erdmann's misconduct and his ultimate prosecution. Mr. Shane Phelps was the special prosecutor assigned to investigate and prosecute Dr. Erdmann's criminal conduct. In a declaration he signed regarding this case, Mr. Phelps reported that he and a team of detectives had identified over one hundred potential false autopsies submitted by Dr. Erdmann. Several bodies were exhumed and examination revealed that he had not performed the

---

[7] Another of Mr. Brewer's state post-conviction attorneys, Ms. Hilary Sheard, Esq., reports that for most of her representation of Mr. Brewer, she did not have decision-making authority regarding the case as Mr. Richard L. Wardroup, Esq., was lead counsel. *See Declaration of Hilary Sheard*, dated June 27, 2017, at ¶ 8 (Exhibit F, Motion to Stay) [ECF 53-1 at 24]. Ms. Sheard reports that while working for Mr. Wardroup on this case, "I then discovered that the District Attorney, James Farren, had previously withdrawn from Mr. Brewer's case because he could not, in good faith, vouch for Dr. Erdmann's work. I urged Mr. Wardroup to use Mr. Farren's adoption of such contrary positions to Mr. Brewer's advantage, for example, by seeking to disqualify Mr. Farren from the case. Mr. Wardroup did not do so." *Id.* at ¶ 16 [ECF 53-1 at 26].

autopsies as he reported and had falsified these reports. *See* Am. Pet. at 45; A275 (Decl. Shane Phelps, Nov. 30, 2015).

Upon learning that Mr. Farren actually presented Dr. Erdmann's autopsy report in this case to Petitioner's jury, Mr. Phelps expressed surprise and outrage. Noting that Dr. Erdmann's autopsy of the victim in this case took place in 1991, Mr. Phelps stated:

> It has been reported to me that Mr. Farren used another pathologist to testify from Erdmann's report and present Erdmann's work as in conformance with the scientific method. It is inconceivable to me that any prosecutor or pathologist would rely on any autopsy by Dr. Erdmann, especially from that period of time. I have tried four death penalty cases as a prosecutor and have lectured at seminars for prosecutors on the decision to seek the death penalty and the ethics of death penalty prosecutions. If I had been the prosecutor on the capital re-sentencing of Mr. Brewer, I cannot think of any scenario in which I would have considered trying to rely on a report by Dr. Erdmann in a death penalty case. I do not believe that such a strategy in a death penalty case, or any criminal case for that matter, is consistent with a prosecutor's oath to seek justice. I would not have done it.

A276. Mr. Phelps is available and willing to testify at an evidentiary hearing for Mr. Brewer. *Id.*

Likewise, Mr. Tommy Turner, a former Lubbock County prosecutor who served as the Special Prosecutor in the Court of Inquiry Proceedings concerning Dr. Erdmann, also stated his incredulity that Mr. Farren relied upon the report of Dr. Erdmann in prosecuting Mr. Brewer. Mr. Turner, who investigated approximately 300 autopsies which Dr. Erdmann claimed to have performed, states:

> Dr. Erdmann was a completely untruthful person. Even the simplest details of Erdmann's background were almost impossible to confirm because of the different versions of the facts that he had given on different occasions.
>
> . . . .
>
> I would have gladly testified concerning my knowledge of Dr. Erdmann's practices and reputation in the in the 2009 sentencing hearing of Brent Brewer. I am astonished to hear that a jury was presented with evidence concerning an autopsy and prior testimony of Dr. Erdmann without being alerted to the suspect nature of any matter in which Erdmann was involved.

A156-57 (Aff. Tommy Turner, July 17, 2012). He too, is available and willing to testify in an

evidentiary hearing on behalf of Mr. Brewer.  A157.

If this Court were to grant Mr. Brewer an evidentiary hearing, he would also present the testimony

of trial counsel, Mr. Anthony Odiorne, and Mr. Ray Keith, to testify about their failure to cross-

examine Dr. Natarajan with the plethora of impeachment evidence regarding the unreliability of Dr.

Erdmann's work.

Mr. Brewer would also present the testimony of Mr. Millard Farmer, who was the

attorney indicted by then District Attorney Randall Sherrod for raising allegations of Dr.

Erdmann's criminal conduct in other cases. He will testify about the evidence he uncovered

regarding Dr. Erdmann and the lengths that the Potter County District Attorney's Office went

to suppress this evidence and intimidate those who challenged Dr. Erdmann.

In summary, the witnesses Mr. Brewer would like to present to this Court regarding

this claim are:

- Mr. Shane Phelps, special prosecutor who led the investigation of Dr. Erdmann's criminal misconduct;
- Mr. Tommy Turner, former Lubbock County prosecutors who served as Special Prosecutor in the Court of Inquiry Proceedings concerning Dr. Erdmann;
- Mr. Millard Farmer, attorney indicted by then District Attorney Randall Sherrod for raising allegations of Dr. Erdmann's criminal conduct in other cases;
- Mr. Anthony Odiorne, trial counsel;
- Mr. Ray Keith, trial counsel;
- Mr. Richard Wardroup, state habeas counsel; and
- Ms. Hilary Sheard, state habeas counsel.

Additionally, Mr. Brewer seeks the following discovery:

1. Any and all evidence, including but not limited to memoranda, notes correspondence, police reports, expert reports, consultations with any experts, and consultation with other law enforcement officials regarding the unreliability of Dr. Erdmann's work as a pathologist while employed by Randall, Potter and any other county where he worked as the State's pathologist.

2. Any and all evidence, including but not limited to reports, memoranda, correspondence, meeting notes and any other documentation regarding false

statements made to law enforcement by Dr. Erdmann

3. Any and all notes, memoranda, correspondence and any other document including any ethics opinions regarding District Attorney Farren's withdrawal as prosecutor from Petitioner's 1997 state post-conviction litigation.

4. Any and all notes, memoranda, correspondence, reports and any other document regarding the cancellation of Dr. Erdmann's service contract with Randall and Potter counties including all such evidence dating back from 1984 through 2009.

5. Any and all evidence, including notes, phone messages, police reports, correspondence and any other documentation regarding Randall County's efforts to hide/suppress Dr. Erdmann's misdeeds prior to his prosecution in 1995.

6. Any and all correspondence between Randall Sherrod, Esq., and James Farren, Esq., regarding Dr. Erdmann.

7. Any and all evidence regarding Mr. Farren's participation, or that of the Randall County District Attorney's Office, in the ill-fated prosecution of Millard Farmer, Esq., and two local law enforcement officers who testified about Erdmann's professional misconduct instigated by Mr. Sherrod and others to intimidate those who sought to expose Erdmann's criminal conduct.

## C.   Petitioner Requests an Evidentiary Hearing on Claim IV and Cause to Excuse Any Procedural Default of the Claim.

Trial counsel were ineffective for failing to investigate and present readily available evidence rebutting the State's case on future dangerousness. *See* Am. Pet. at 63-75; Reply at 24-28. Trial counsel admits that they did not investigate any of the alleged prior bad acts of Mr. Brewer presented by the State, even though the State in 2009 relied on much of the same past conduct presented at Mr. Brewer's previous trial in 1991, and even though trial counsel's defense centered almost entirely on establishing that Mr. Brewer did not present a future danger. *See* A161-62 (Decl. Odiorne, July 31, 2015); A167-68 (Decl. Cowie, July 31, 2015). Indeed, trial counsel Anthony Odiorne admits that they had no strategic or tactical reason for not conducting this investigation and mitigation specialist Rob Cowie acknowledges that he did not interview any of the witnesses outlined in this claim. *See* A161-62; A167-68. This Court should grant an evidentiary hearing so that Mr. Brewer may establish trial counsel's deficient performance through the testimony of trial counsel

21

Odiorne and Ray Keith and mitigation specialist Cowie.[87]

In failing to conduct any investigation at all into the State's future dangerousness case, trial counsel also failed to interview State's witnesses Aimee LeMaster (now Long), Kevin Lewis, and Officer Ron Mosher. A161. In both 1991 and 2009, the State offered the testimony of Ms. LeMaster regarding an alleged assault when she was 15 years old and Mr. Brewer was 16 years old. Mr. Lewis, who testified in 1991 that Mr. Brewer threatened to stab him in the eye with a pencil while they were in county jail, was again questioned by the State in 2009. Officer Mosher testified in both 1991 and 2009 about his arrest of Mr. Brewer in Naples, Florida in 1989 for carrying a concealed weapon, a knife seen in a car driven by Mr. Brewer during a traffic stop.

As noted in Mr. Brewer's Petition, *see* Am. Pet. at 68-73, counsel would have discovered that each of these witnesses could have provided testimony that would have countered the State's case for future dangerousness. Ms. Long would have testified that she "did not know Brent to be a violent person," and that "I don't think Brent intended to hurt me." She also notes that this "incident was out of character for Brent" and "He wasn't dangerous. He was a teenager, just a kid." A201 (Statement Aimee Long, June 16, 2015).

Additionally, if the defense team had interviewed Kevin Lewis, they would have learned that Mr. Lewis was the instigator of the argument in the county jail while he and Mr. Brewer were playing cards. Mr. Lewis recalls that he was the aggressor and stood up and started yelling at Mr. Brewer. *See* A198 (Decl. Kevin Lewis, July 22, 2015). According to Mr. Lewis, Brewer remained calm and seated throughout. *Id.* Mr. Lewis added that "I could see how he could have felt really threatened at that

---

[8]Petitioner has further alleged that trial counsel were ineffective for failing to present affirmative evidence demonstrating Mr. Brewer's good conduct in prison and failed to investigate evidence of Mr. Brewer's bad acts prior to advising himself to testify. Trial counsel and the defense mitigation specialist acknowledge that they had no strategic or tactical reasons for these failures. A163-64 (Odiorne Decl. ¶¶ 18, 21); A168 (Cowie Decl. ¶ 12). Petitioner requests the opportunity to further develop the facts of this deficient performance at any evidentiary hearing as well.

time. I stood up and started yelling at him and I was really pissed. I was standing in front of him and Brent was pinned down. He was trapped between the table and the wall." *Id.* Mr. Lewis noted that "It was only then that Brent threatened me. And again, he remained seated. The incident lasted only a few seconds and it was over." A199.  Finally, Mr. Lewis, if asked, would have told the jury that Brent seemed to get along fine with the correctional officers and inmates and "never got violent or aggressive . . . he was pretty calm and mellow." *Id.* This is night and day from what the prosecution alleged and, because counsel failed to conduct a reasonable investigation, the State's misleading presentation was unrebutted.

Finally, had counsel investigated the circumstances of Mr. Brewer's 1989 arrest, counsel would have discovered that prior to Petitioner's arrest the police department had received information that John Greenman had threatened to hurt a member of the police force with a knife or other weapon, and Officer Mosher stopped the car (owned by the Greenmans) because of this known threat. Mr. Brewer was arrested by Officer Mosher because he was in the driver's seat, and the handle of the knife was sticking out from between the driver's seat and the console, but equally accessible to both Mr. Brewer and Mrs. Greenman. *See* A206 (Decl. Ronald Mosher, July 7, 2015). Officer Mosher chose to arrest Petitioner only because the knife was on his side of the car. He would have told the jury, if asked, that Petitioner was compliant at all times and fully cooperated with police.  *Id.*

In its *Finding, Conclusions and Recommendations to Grant Petitioner's Motion to Stay and to Stay Proceedings*, this Court concluded "Each of the items of omitted evidence, if true, would have had some mitigating value regarding the related bad acts. Brewer has presented evidence that trial counsel had no strategic reason for not investigating such bad acts and presenting such mitigating evidence." *Brewer*, 2018 WL 4608260, at *6.

23

Petitioner requests a hearing in order to present the testimony of Ms. Long, Mr. Lewis, and Officer Mosher at an evidentiary hearing to prove that trial counsel was ineffective for failing to investigate and interview these witnesses and that Mr. Brewer suffered prejudice warranting him a new sentencing hearing.

Additionally, trial counsel failed to rebut the State's evidence about Mr. Brewer hitting his father, Albert, with a broom handle. Defense counsel failed to develop the testimony of Karen Brewer in rebuttal regarding the depth of violence in their home or in her relationship with her husband, or about the violence inflicted on Brent by his father. Am. Pet. at 71. Defense counsel also failed to investigate Albert Brewer's past history, where each of his at least three former wives and children from these relationships would have testified to Albert Brewer's unprovoked and unpredictable violence towards them. *Id.* at 72. The affidavits of Billie Ann Young (Mr. Brewer's younger sister), Faye Brewer (his paternal step-aunt), and Corrie Brewer (a daughter of Albert Brewer from an earlier marriage) proffered in these proceedings establish that trial counsel would have discovered a powerful counter-narrative to the State's description of Mr. Brewer's alleged assault of his father, that Mr. Brewer was protecting his mother from his father's violent outburst. *Id.* at 71-73; A169-76, A186-87, A188-90.

In addition, Mr. Brewer has also proffered the declarations of Stanley Kemrer and Timothy B. Sullivan regarding Albert Brewer's crimes of violence and sexual assault on minors he committed while in the military. Doc. 49-2 at 11-15, 19-20. These offenses earned him a dishonorable discharge. Mr. Kemrer would have told the jury, and will tell this Court if an evidentiary hearing is granted, that while serving in the military, he was stabbed in the stomach by Albert Brewer in an unprovoked attack. Doc. 49-2 at 19-20.

Albert Brewer was court-martialed for sexually assaulting young boys on a military base in Germany.  Doc. 49-1 at 10-11.  The declaration of Timothy B. Sullivan, one of the victims,

addresses the traumatic impact of the incident: "For a very long time I had nightmares about the incident. In these nightmares, Brewer got me again and was trying to kill me either with a weapon or by strangling me." Doc. 49-2 at 13. He states that "I am 52 years old now and I live alone and have basically resigned myself to the fact that I'm incapable of having long-term relationships." *Id.* at 14.

In the Post-Trial Opinion, the Judge Advocate upheld the sentence, stating that "the testimony of the two children who testified concerning the lewd and lascivious acts committed on [them] establishes beyond a reasonable doubt that the accused was guilty of the offense as alleged." Doc. 49-2 at 5.

Albert Brewer was also court-martialed for domestic violence against his wife, including charges for possession of a weapon. A Military Police Report dated March 6, 1975, indicates that on March 4 of that year, "Brewer and his wife, for unknown reasons, became involved in a verbal argument. Mrs. Brewer was heard yelling 'Don't beat me' and crying." *See* Doc. 49-1 at 4. Brewer was taken into custody. *Id.* at 5.  In July 1976, he was again arrested after a domestic disturbance and was found to be carrying a concealed weapon. It was also discovered that he was AWOL. *See* Doc. 49-1 at 7-8.

All of this evidence would have been a very effective counter weight to the State's assertions that Mr. Brewer beat his father, a former Green Beret and war hero, unprovoked and without justification, lending credence to his testimony and that of his mother and sister.

Indeed, the District Court found that "Brewer's federal habeas counsel has indeed presented "chilling stories of unprovoked and unpredictable violence" by Brewer's father against his ex-wife Pat and their daughter, Corrie Brewer." *Brewer*, 2018 WL 4585357, at \*2.

Petitioner requests to present the testimony of Billie Ann Young, Faye Brewer, Corrie Brewer, Stanley Kemrer, and Timothy Sullivan to establish and further develop the facts offered in their proffered statements.

An evidentiary hearing and *de novo* review on this claim are proper for several reasons. First, this claim of ineffectiveness is unexhausted because it was not fairly presented to the state court. What is now presented is "'significantly different and stronger' than that presented to the state court" because of additional evidence now offered; the claim is therefore "not exhausted" and "require[s] further proceedings in state court." *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003).

This Court should allow Petitioner to establish cause and prejudice to overcome any procedural default under *Martinez* and *Trevino*. An evidentiary hearing on state habeas counsel's failure to investigate and present this substantial claim of trial counsel's ineffectiveness would be appropriate. *See supra* Section I.A.2; *Barrientes*, 221 F.3d at 771 ("[I]f the district court determines that [the habeas petitioner] has established cause and prejudice for his procedural default, it should proceed to conduct an evidentiary hearing on any claim for which cause and prejudice exists."); *Detrich*, 740 F.3d at 1247 ("Martinez would be a dead letter if a prisoner's only opportunity to develop the factual record of his state PCR counsel's ineffectiveness had been in state PCR proceedings, where the same ineffective counsel represented him.").

In the alternative, Mr. Brewer believes a weaker version of this claim was raised in state court but the state court "inadvertently overlooked" this exhausted claim. In that case, Mr. Brewer is entitled "to an unencumbered opportunity to make his case." *Johnson v. Williams*, 568 U.S. 289, 303 (2013). Finally, the state court's refusal to grant an evidentiary hearing on this claim was an unreasonable determination of the facts due no AEDPA deference under § 2254(d) pursuant to *Brumfield v. Cain*, 135 S. Ct. 2269, 2273 (2015). *See supra* Section I.B.1; Reply at 1-7, 26.

For these reasons, Petitioner requests an evidentiary hearing to present the testimony of state habeas counsel, Richard Wardroup and Hillary Sheard, to establish cause and prejudice under *Martinez* and *Trevino* for the default of this meritorious claim of ineffective assistance of trial counsel. Mr. Wardroup has signed a declaration, attached to this motion, wherein he states that:

26

Other than my review of the record and my interview with Brent Brewer, I directed no investigation into the prior bad acts presented by the State against Mr. Brewer. As the Capital Assistance Attorney with TCDLA, I am well aware that a reasonable strategy cannot be made without first conducting an adequate investigation. We train attorneys across Texas that before deciding on a strategy, it must be adequately investigated. This we did not do regarding this issue.

I am familiar with the evidence gathered by current federal counsel for Mr. Brewer concerning the prior bad acts evidence. If I had this evidence, I would have wanted to present it the state habeas court.

Declaration of Richard L. Wardroup, at ¶¶ 2, 3 (Exhibit E, Motion to Stay) [ECF 53-1 at 34].

Similarly, Ms. Sheard has also signed a declaration admitting that they had no strategic or tactical reason for not conducting an investigation into the prior bad acts evidence:

I have had an opportunity to review the federal petition for writ of habeas corpus filed by current federal counsel for Mr. Brewer. The exhibits include the affidavits of future dangerousness witnesses including some who testified against Mr. Brewer in 2009, and others who were not called at that time. I would have wanted to present the evidence that is now provided in their respective affidavits to the state habeas court. There would have been no strategic or tactical reason for not doing so.

Declaration of Hillary Sheard, Esquire, at ¶ 33 (Exhibit F, Motion to Stay) [ECF 53-1 at 30].[9]

For these reasons, Petitioner respectfully requests an evidentiary hearing on this claim and related procedural issues at which he can present the testimony of:

- Anthony Odiorne, trial counsel;
- Ray Keith, trial counsel;
- Rob Cowie, trial mitigation specialist;
- Aimee Long, ex-girlfriend;
- Kevin Lewis, former cellmate;
- Ronald Mosher, former police officer;
- Billie Ann Young, maternal half-sister;
- Faye Brewer, paternal step-aunt;
- Corrie Brewer, daughter of Albert Brewer;
- Stanley Kemrer, Albert Brewer stabbing victim;

---

[9] Ms. Sheard added that "[T]he failure to conduct the investigation necessary to adequately exhaust many of the factual allegations and issues presented by current for Mr. Brewer was not the result of strategic or tactical decision-making." *Id.* at ¶ 40 [ECF 53-1 at 32].

- Timothy B. Sullivan, Albert Brewer child sexual assault victim;
- Richard Wardroup, state habeas counsel; and
- Hilary Sheard, state habeas counsel.

Petitioner respectfully requests the opportunity to prove the facts proffered in support of this claim through these witnesses' testimony in order to further establish that he is entitled to relief.

### D.   Petitioner Requests an Evidentiary Hearing on Claim V.

Petitioner has offered numerous affidavits from witnesses in support of this claim. Am. Pet. at 76-103; A35-81; A104-20; A141-57; A160-209; A274-470; A482-84. The State largely does not respond to the substance of these affidavits, merely arguing that "Brewer's claim, with a few exceptions, relies almost exclusively on unsworn declarations he never presented to the state court. This Court cannot consider them." Answer at 72. However, as detailed above and in his Reply at 1-7, the state court denied Mr. Brewer an evidentiary hearing in state court on this claim based on the unreasonable factual determination that there were no "controverted, previously unresolved issues material to the legality of the applicant's confinement." Tex. Code Crim. Proc. art. 11.071 §§ 8(a), 9(a).

Mr. Brewer presented a well-pleaded claim for relief on this issue in state court post-conviction proceedings, offering the affidavits of ten potential witnesses[10] in support of his claim that trial counsel was ineffective for failing to investigate and present compelling mitigating evidence.  2 SHCR 287-354. The state court initially granted Mr. Brewer an evidentiary hearing, *inter alia*, on "[t]he claim of ineffective assistance of trial counsel." 7 SHCR 2136. However, the State filed a motion to "narrow and clarify the scope of the order designating issues," 7 SHCR 2137,

---

[10] State habeas counsel proffered affidavits or interview notes from Donald Wayne Bartlett, Jessie Ford, Karen Brewer, Billie Ann Young, Brenda Brewer, Susan Brewer, Floyd Israel Brewer, Dane Stovall, John R. Rich, and Leona Gill. *See* 5 SCHR 1440-97.

contending that its own affidavits offered in response to Petitioner's affidavits "adequately resolves any factual disputes in Claim Four."[9] State habeas counsel countered that competing affidavits in fact created material disputes that needed to be resolved at an evidentiary hearing, and identified at least 23 discrete controverted, unresolved factual issues for this claim alone.[11] 7 SHCR 2067, 2099-101.

Nevertheless, the state court, relying on the State's erroneous argument, concluded that "[t]he only unresolved issue to be addressed at the evidentiary hearing is whether trial counsel's performance regarding prosecution witness Dr. Richard Coons was deficient and violated professional standards and, if so, whether the deficient performance prejudiced the outcome of the sentencing trial." 8 SHCR 2466.

This conclusion was objectively unreasonable under § 2254(d)(2) in light of the evidence offered in state court, and so the state court's decision not to grant Mr. Brewer an evidentiary hearing on this claim is due no deference under AEDPA. *See Brumfield*, 135 S. Ct. at 2273. This Court is free to review this claim *de novo*, and should grant Petitioner a hearing on this claim because "such a hearing could enable [Mr. Brewer] to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.

The State's chief substantive response to Mr. Brewer's proffered affidavits is that the evidence Mr. Brewer alleges trial counsel "failed to offer was in fact presented at trial on one form or another." Answer at 72. Petitioner has already detailed in his reply how the State grossly overstates the scope and strength of the evidence presented at trial. Reply at 28-31. Mr. Brewer has also established that, based on the additional evidence and affidavits offered in federal and state habeas proceedings, substantial evidence of Mr. Brewer's sexually traumatic experiences, his father's violence and depravity, and his mental illnesses was not presented at Petitioner's sentencing hearing.

---

[11] Claim V of Mr. Brewer's current federal petition was presented as Claim Four in state habeas proceedings.

Reply at 31-39. Petitioner has thoroughly detailed why he is entitled to relief based on trial counsel's failure to investigate, develop, and present compelling mitigating evidence in violation of his right to the effective assistance of counsel. Am. Pet. at 76-103; Reply at 28-35. Petitioner should be granted a hearing to further prove and develop the factual allegations of this claim.

In particular, Petitioner requests that the Court exercise its discretion and allow the presentation of the following witnesses:

- Anthony Odiorne, trial counsel;
- Ray Keith, trial counsel;
- Rob Cowie, trial mitigation specialist;
- Dr. Mark D. Cunningham, forensic psychologist;[10]
- Billie Ann Young, maternal half-sister;
- Jessie Ford, maternal grandfather;
- Brenda Brewer, paternal aunt;
- Susan Brewer, stepmother and paternal cousin;
- Floyd Israel Brewer, paternal half-brother and paternal first cousin once removed;
- Leona Gill, friend of Billie Ann Young;
- Faye Brewer, paternal step-aunt;
- Raymond Karl Ford, uncle;
- Linda Belz, maternal step-aunt;
- Shannon Minnick, ex-girlfriend;
- Erik Gravely, childhood friend;
- Corrie Brewer, paternal half-sister;
- Hilary Sheard, state post-conviction counsel;
- Richard Wardroup, state post-conviction counsel.

Petitioner has proffered a declaration, affidavit, or expert report from each of these witnesses in support of this claim. This evidence is cited throughout Claim V in both Mr. Brewer's Amended Petition and Reply. Am. Pet. at 76-103; Reply at 28-35.

Indeed, Mr. Odiorne admits that the defense had no strategic or tactical reason for not investigating and presenting mental health evidence related to Mr. Brewer:

> We also did not have Mr. Brewer evaluated by a mental health professional. We were aware that he had been previously evaluated by Dr. Mark Cunningham, Ph.D., a clinical and forensic psychologist on behalf of post-conviction counsel in the late 1990's and that there was a detailed report, complete with a narrative of Mr. Brewer's

psycho/social history and diagnoses. I do not recall any discussions amongst the defense team regarding the Cunningham narrative. This is the type of evidence I would have wanted to present to the jury, albeit possibly through a different expert…Nor did we have a strategic or tactical reason for not investigating the leads contained in Dr. Cunningham's report.

A164 (Decl. Odiorne, dated July 31, 2015, at ¶ 16).

The defense team's mitigation investigator, Robert Cowie, confirms Mr. Odiorne's

recollection:

We were also aware that Dr. Mark Cunningham had conducted a detailed evaluation of Mr. Brewer in 1998 for his then post-conviction attorneys. We did interview Dr. Cunningham. We knew that Mr. Brewer, who had been released from Big Spring Psychiatric Hospital shortly before the murder of Mr. Laminack, had been diagnosed by Dr. Cunningham as suffering from Major Depressive Disorder, recurrent, and a number of other psychiatric conditions. We did not conduct a complete investigation into the background information and a number of the names contained in Dr. Cunningham's forty-seven page report and did not hire our own mental health expert to evaluate Mr. Brewer.

A168 (Decl. Cowie, at ¶ 11).

Likewise, post-conviction counsel states:

The state habeas application also failed to present a mental health expert to offer a psychological opinion about the impact of Mr. Brewer's unstable and violent upbringing on his mental health. Mr. Wardroup did retain a neuropsychologist, Dr. Mary Elizabeth Kasper, Ph.D. She conducted a series of neuropsychological tests on Mr. Brewer. She also interviewed him at the Polunsky Unit, and prepared a report.

There was also a report by Dr. Mark Cunningham, Ph.D., dated 1996. Both reports contained very helpful information that would have given a psychological context to Mr. Brewer's developmental years and to the development of his personality. I do not know why trial counsel did not obtain an opinion from a mental health professional such as Dr. Kasper, or build on the information they already possessed in Dr. Cunningham's report, since I can see no strategic or tactical reason for not presenting this evidence, especially since their case rested largely on Mr. Brewer's own uncorroborated testimony.

Decl. of Hilary Sheard, at ¶¶ 35-36 [ECF 53-1 at 30-31].

And, post-conviction counsel admits that they had no strategic reason for not presenting this

evidence during state post-conviction proceedings: "I am aware that current counsel for Mr. Brewer

have secured affidavits from mitigation witnesses that [we] did not interview, and have reviewed

many of those affidavits. The information they provide is the type of information that one would have wanted to present to the state habeas court. There was no strategic or tactical reason for not presenting this evidence in state court." *Id.* at ¶ 27 [ECF 53-1 at 28].

Based on this and other evidence and argument offered in Petitioner's pleadings, Mr. Brewer is entitled to relief on this claim. Mr. Brewer respectfully requests that this Court grant him an evidentiary hearing to prove these facts and establish that he is entitled to relief because his trial counsel failed to investigate, develop, and present compelling mitigating evidence in violation of his Sixth Amendment right to the effective assistance of counsel.[12]

### E.   Petitioner Requests an Evidentiary Hearing on Claim VII, a Hearing on Cause to Overcome Default of the Claim, and Discovery on the Suppressed Records at Issue.

Mr. Brewer has alleged that the State suppressed Kristie Nystrom's mental health records, which contained a wealth of impeachment evidence that would have not only undermined her credibility, but also raised serious doubts concerning the State's theory that Ms. Nystrom's role in Mr. Laminack's death was relatively minor compared to Mr. Brewer's. Am. Pet. at 105-108.

The records noted, inter alia, that Ms. Nystrom lacked honesty, was prone to "over-dramatization," and had a pattern of "projection of blame towards others." Kristie Nystrom Big Spring State Hospital Records at 10, 23-24, previously filed under seal. Such evidence could have been used to impeach Ms. Nystrom by undermining her credibility.

As set forth in Mr. Brewer's amended petition, the State had obtained the records and had a copy in the courtroom, but refused to turn a copy over to the defense, citing Ms. Nystrom's privacy

---

[12] The State characterizes Mr. Brewer's early sexual encounters discussed by Dr. Cunningham as "insignificant," and argues that some of the thirty-four issues identified by Dr. Cunningham would have hurt Mr. Brewer's mitigation case. Answer at 76, 80. Petitioner disputes this characterization of Dr. Cunningham's reports. Reply at 31-33. Dr. Cunningham's own testimony at an evidentiary would help in resolving these factual disputes.

interests. Am. Pet. 106; 22 RR 162, AM Pet. 106. Respondent, however, has asserted that the State did not possess the records, and therefore could not have suppressed them. Answer at 84. As such, the State argues, Mr. Brewer is not entitled to relief under *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* However the record contradicts this assertion, and suggests that trial prosecutor Mr. Farren possessed the records and handed a copy to the judge when he requested them. 22 RR 163. This Court should hold an evidentiary hearing or grant discovery of the District Attorney's trial file to resolve this material factual dispute.

The State also argues that trial counsel would not have used the records even if they were available. Answer at 84. In support of this, the State relies on an affidavit from trial counsel Odiorne, stating that their strategy at trial was for Brent to take responsibility for the crime. *Id.;* 7 SHCR 2009. However, the State's assertion that this strategy would have precluded trial counsel from using the records is merely conjecture. This affidavit, and the record as a whole, are silent regarding whether trial counsel would have used or introduced Ms. Nystrom's records. The record indicates that trial counsel had certainly not ruled out using the records for impeachment based on their strategy, as counsel requested the records be made available for their inspection prior to cross-examining Ms. Nystrom. 22 RR 160. Moreover, it is unclear how the content of the records would have shaped trial counsel's strategy, had they been disclosed. Whether trial counsel would have introduced the records and how the records would have shaped their strategy are unresolved issues of fact on which this Court should hold a hearing.

Section 2254(e) does not bar this Court from granting an evidentiary hearing on this claim. Mr. Brewer did not "fail to develop the factual basis of" this claim in state habeas proceedings. Rather, by not disclosing Ms. Nystrom's record to Mr. Brewer during state habeas proceedings, the State violated its continuing duty of disclosure under *Brady* and *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 94-95 (2009). Thus, the facts supporting this claim were not

reasonable available to Mr. Brewer and §2254(e) does not apply. *See Williams*, 529 U.S. at 438-444.

Additionally, Mr. Brewer should be permitted to demonstrate cause and prejudice at a hearing. As laid out in the concurrently filed Motion to Stay and Hold in Abeyance Federal Proceedings, this Court could either stay the proceedings so Petitioner can present this unexhausted claim, *Rhines v. Weber*, 544 U.S. 269, 278 (2005) or allow Petitioner to establish cause and prejudice to overcome any procedural default. Petitioner can establish cause and prejudice. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (holding cause and prejudice "parallel" elements of Brady). The State's violation of its continuing duty to disclose these records caused Mr. Brewer's failure to plead this claim in state habeas proceedings, as the facts giving notice of and supporting this claim were not available to Mr. Brewer. As noted above, Mr. Brewer has alleged that the State possessed these records, while counsel for Respondent has disputed this. This Court should grant discovery of the District Attorney's trial and state habeas file and hold a hearing to resolve these issues.

In the alternative, Mr. Brewer has alleged that the failure to present this claim in state court was caused by state habeas counsel's failure to conduct a reasonable investigation. State habeas counsel had no reason for failing to investigate the powerful impeachment evidence about Kristie Nystrom that was withheld by the prosecution. Counsel has an obligation to do a thorough factual investigation beyond the record at trial. State habeas counsel admits they did not perform that investigation. As a result, counsel failed to find the strong impeachment evidence uncovered by federal counsel and plead in Claim VII. State habeas counsel's failure to perform a reasonable investigation provides cause and prejudice for Mr. Brewer's default of this claim. This Court should hold an evidentiary hearing to allow further development of state habeas counsel's failure to conduct a reasonable investigation. As discussed above, §2254(e)(2) does not bar a hearing on these matters that resulted in Mr. Brewer's default, as §2254(e)(2) applies only to claims, not procedural matters. *Henry*, 750 F.3d at 1231-32; *see also Sibley*, 377 F.3d at 1207 n.9; *Cristin*, 281 F.3d at 412-13. In sum,

this Court should hold a hearing at which the following witnesses testify:

- James Farren, prosecutor
- Anthony Odiorne, trial counsel;
- Ray Keith, trial counsel;
- Richard L. Wardroup, state habeas counsel;
- Hillary Sheard, state habeas counsel.

And under Rule 6, Petitioner has good cause for discovery of the following documents:

1. Any and all documents in the possession of the District Attorney related to Kristie Nystrom.

## III.   CONCLUSION

Petitioner has shown "good cause" for discovery. Petitioner has provided "specific allegations"—as explained above and in the Petition and Reply—"show[ing] reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09. Petitioner's requests are appropriately narrow. Applying these standards, Petitioner requests permission to conduct discovery pursuant to Federal Rule of Civil Procedure 26(b), which provides, among other things, that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," and pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

Petitioner has also established that he is entitled to an evidentiary hearing for the reasons detailed above because he has pled material facts that could make out a claim; those facts are subject to genuine dispute; and the facts have never before received evidentiary development in any full or fair hearing. An evidentiary hearing is appropriate because "such a hearing could enable [Mr. Brewer] to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.

35

For these reasons, Petitioner respectfully requests that this Court grant his requests for discovery and an evidentiary hearing.

Respectfully submitted,

/s/  Peter Walker

PHILIP ALAN WISCHKAEMPER                SHAWN NOLAN
TX Bar No.: 21802750                    PA Bar No.: 53565
Law Office of Philip Wischkaemper       PETER WALKER
915 Texas Avenue                        TX Bar No.: 24075445
Lubbock, TX  79401                      Federal Community Defender Office
(806) 763-9900                            for the Eastern District of Pennsylvania
miglit@aol.com                          601 Walnut Street, Suite 545 West
                                        Philadelphia, PA  19106
                                        (215) 928-0520
                                        shawn_nolan@fd.org
                                        peter_walker@fd.org

Dated:  January 9, 2020

36

### <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have conferred with counsel for Respondent, Assistant Attorney General

Erich Dryden, who indicated he opposes this motion.

/s/ Peter Walker
Peter Walker

Dated: January 9, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused the foregoing Motion to be served via electronic filing through the Court's system upon the following party:

Erich Dryden Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548
Austin, Texas 78711-2548

/s/ Peter Walker
Peter Walker

Dated: January 9, 2020