IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

BRENT RAY BREWER,                          §
                    Petitioner,            §
                                           §
v.                                         §        No. 2:15-cv-00050-Z-BR
                                           §        *CAPITAL CASE*
LORIE DAVIS,                               §
Director, Texas Department of              §
Criminal Justice,                          §
Correctional Institutions Division,        §
                    Respondent.            §

**RESPONDENT DAVIS'S RESPONSE IN OPPOSITION TO RENEWED
MOTION FOR DISCOVERY AND EVIDENTIARY HEARING**

KEN PAXTON                                 EDWARD L. MARSHALL
Attorney General of Texas                  Chief, Criminal Appeals Division

JEFFREY C. MATEER                          *ERICH DRYDEN
First Assistant Attorney General           Assistant Attorney General
                                           Criminal  Appeals  Division

MARK PENLEY
Deputy Attorney General                    P.O. Box 12548, Capitol Station
For Criminal Justice                       Austin, Texas 78711-2548
                                           (512) 936-1400

*Counsel of Record

_____

ATTORNEYS FOR RESPONDENT
_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

RESPONDENT DAVIS'S RESPONSE IN OPPOSITION TO RENEWED
MOTION FOR DISCOVERY AND EVIDENTIARY HEARING....................... 1

ARGUMENT.......................................................................................................... 1

I.   Brewer Is Not Entitled to Discovery............................................................. 1

II.  Brewer's Request for an Evidentiary Hearing Must Be
     Denied........................................................................................................ 6

     A. *Pinholster* precludes a hearing on the claims adjudicated
        on the merits by the state court.............................................................7

     B. A hearing is foreclosed with regard to Brewer's
        unexhausted claims.............................................................................. 10

     C. Nonetheless, Brewer's claims do not merit a hearing. ................... 13

        1.  Ineffectiveness regarding Dr. Coons (Claim 1) ............................ 13

        2.  Failure to investigate and present readily available
            evidence rebutting the State's case on future
            dangerousness (Claim 4) ................................................................ 16

        3.  Failure to present mitigating evidence (Claim 5) ...................... 21

        4.  Allegedly suppressed medical records pertaining to
            Nystrom (Claim 7)......................................................................... 22

     III. Notice of Failure to Comply with Scheduling Order ........................... 25

CONCLUSION ....................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016) ...................................................... 12

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010) ........................................................ 7

*Banks v. Dretke*, 540 U.S. 668 (2004) ......................................................................... 22

*Bracy v. Gramley*, 520 U.S. 899 (1997) ......................................................................... 2

*Brady v. Maryland*, 373 U.S. 83 (1963) ..................................................................... 23

*Cole v. Davis*, No. H-17-940, 2018 WL 6019165 (S.D. Tex. 2018) .............................. 2

*Cullen v. Pinholster*, 563 U.S. 170 (2011) .......................................................... passim

*Cummings v. Davis*, No. 6:18-CV-00125-ADA (W.D. Tex. 2020) ................................ 2

*Davila v. Davis*, 137 S. Ct. 2058 (2016) ..................................................................... 12

*Devoe v. Davis*, 717 F. App'x 419 (5th Cir. 2018) ...................................................... 16

*Fierro v. Johnson*, 197 F.3d 147 (5th Cir. 1999) ......................................................... 6

*Garcia v. Davis*, 704 F. App'x 316 (5th Cir. 2017) .............................................. 12–13

*Garza v. Stephens*, 738 F.3d 669 (5th Cir. 2013) ........................................................ 7

*Gonzales v. Davis*, 924 F.3d 236 (5th Cir. 2019) ................................................ 12–13

*Harris v. Nelson*, 394 U.S. 286 (1969) ......................................................................... 2

*Hernandez v. Davis*, No. EP-15-CV-51, 2017 WL 2271495 (W.D. Tex. 2017) ............. 9

*Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008) ................................................. 7

*Jones v. Davis*, 890 F.3d 559 (5th Cir. 2018), *cert. denied*,
      139 S. Ct. 795 (2019) ........................................................................................ 11

*McCamey v. Epps*, 658 F.3d 491 (5th Cir. 2011) .................................................. 9, 10

*Martinez v. Ryan*, 566 U.S. 1 (2012) ............................................................. 11, 12, 23

*Murphy v. Davis*, 732 F. App'x 249 (5th Cir. 2018)  .................................................. 12

*Nelson v. Davis*, --- F.3d ---, 2020 WL 1181516 (5th Cir. 2020)  .......................... 21, 22

*Norman v. Stephens*, 817 F.3d 226 (5th Cir. 2016) .................................................. 19

*Perillo v. Johnson*, 79 F.3d 441 (5th Cir. 1996) ....................................................... 25

*Reed v. Stephens,* 739 F.3d 753 (5th Cir. 2014) ....................................................... 12

*Register v. Thaler,* 681 F.3d 623 (5th Cir. 2012) ..................................................... 13

*Richards v. Quarterman,* 566 F.3d 553 (5th Cir. 2009) ............................................ 13

*Rucker v. Norris*, 563 F.3d 766 (8th Cir. 2009) ......................................................... 2

*Schriro v. Landrigan,* 550 U.S. 465 (2007) ............................................................... 13

*Segundo v. Davis*, 831 F.3d 345 (5th Cir. 2016) .......................................... 12, 24–25

*Smith v. Cain*, 708 F.3d 628 (5th Cir. 2013) ............................................................. 10

*Spence v. Johnson*, 80 F.3d 989 (5th Cir. 1996) ....................................................... 17

*Thompson v. Stephens*, 2014 WL 2765666 (S.D. Tex. 2014) ...................................... 2

*Trevino v. Thaler*, 569 U.S. 413 (2013) ........................................................ 11, 12, 23

*Turner v. Epps*, 460 F. App'x 322 (5th Cir. 2012) .................................................... 11

*United States v. Agurs*, 427 U.S. 97 (1976) .............................................................. 23

*United States v. Brown*, 650 F.3d 581 (5th Cir. 2011) ................................................. 5

*United States v. Fields*, 761 F.3d 443 (5th Cir. 2014) ............................................... 16

*United States v. Runyan*, 290 F.3d 223 (5th Cir. 2002) .............................................. 5

*Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001) ...................................................... 17

*Vasquez v. Stephens,* 597 F. App'x 775 (5th Cir. 2015) ............................................ 12

*Ward v. Stephens*, 777 F.3d 250 (5th Cir. 2015) ...................................................... 19

*Watson v. Davis*, No. SA-16-CA-090, 2017 WL 3841927 (W.D. Tex. 2017) ................ 9

*Williams v. Bagley*, 380 F.3d 932 (6th Cir. 2004) ........................................................ 2

*(Michael) Williams v. Taylor*, 529 U.S. 420 (2000) ...................................................... 10

*Woodard v. Davis*, 3:16-CV-2974, 2018 WL 1757657 (N.D. Tex. 2018),
  report and recommendation adopted, 3:16-CV-2974-C-BK,
  2018 WL 1744809 (N.D. Tex. 2018) ......................................................................... 9

*Woodfox v. Cain,* 772 F.3d 358 (5th Cir. 2014) ............................................................ 8

**Statutes and Rules**

28 U.S.C. § 2241 ............................................................................................................. 1

28 U.S.C. § 2244 ........................................................................................................... 11

28 U.S.C. § 2254 .................................................................................................... passim

Rule 6(a), Rules Governing Habeas Corpus Cases Under § 2254  ............................. 1

Northern District Local Rule 7.1 & 7.2 .................................................................... 25

**RESPONDENT DAVIS'S RESPONSE IN OPPOSITION TO RENEWED
MOTION FOR DISCOVERY AND EVIDENTIARY HEARING**

Petitioner Brent Ray Brewer was convicted and sentenced to death in Texas state court for the brutal murder of Robert Laminack.  After the grant of federal habeas relief, Brewer received a new punishment hearing.  Once again he was sentenced to death, and he now challenges that presumptively valid sentence in this Court pursuant to 28 U.S.C. §§ 2241 & 2254.  Brewer filed an amended petition on December 14, 2015.  Docket Entry (DE) 31.  The Director filed her answer on May 5, 2016.  DE 40.

On June 29, 2017, Brewer filed a motion for discovery and an evidentiary hearing.  DE 54.  This Court subsequently granted Brewer's motion to stay and abate and, in the order, denied Brewer's motion for discovery and a hearing as moot.  DE 76.  Brewer returned to state court and filed a subsequent application that the Texas Court of Criminal Appeals (CCA) dismissed as abusive without considering the merits.  *Ex parte Brewer*, No. 46,587-03, 2019 WL 5420444 (Tex. Crim. App. Oct. 23, 2019).  Brewer then returned to this Court and filed a renewed motion for discovery and a hearing.  DE 94.  For the following reasons, Brewer's motion should be denied.

## ARGUMENT

### I.     Brewer Is Not Entitled to Discovery.

A federal habeas petitioner is only entitled to discovery where there is a showing of "good cause" why discovery should be allowed.  Rule 6(a), Rules Governing Habeas Corpus Cases Under § 2254.  Although "good cause" is not defined, the Advisory Committee Notes to Rule 6 explain that the rule is consistent with the

1

Supreme Court's decision in *Harris v. Nelson*, where the Court concluded that a federal district court must provide discovery only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." 394 U.S. 286, 300 (1969). Thus, good cause may be found when a petition for habeas corpus relief "establishes a prima facie claim for relief." *Id.* at 290. The Court reasoned that habeas actions are particularly unsuited for literal application of the civil discovery rules because "[s]uch a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding." *Id.* at 297. A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

A petitioner cannot show "good cause" for discovery where the claim is defaulted or where the federal court cannot reach the claim's merits. *See Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009); *Williams v. Bagley*, 380 F.3d 932, 975 (6th Cir. 2004); *Cummings v. Davis*, No. 6:18-CV-00125-ADA (W.D. Tex. Jan. 16, 2020) (ECF No. 57 at 4); *Cole v. Davis*, No. H-17-940, 2018 WL 6019165, at *4 (S.D. Tex. Nov. 16, 2018); *Thompson v. Stephens*, 2014 WL 2765666, *2 (S.D. Tex. June 18, 2014) ("A petitioner cannot show good cause if a federal court cannot reach the merits of the disputed claims.").

Here, Brewer seeks discovery with respect to Claim 2 in his petition. In Claim 2, Brewer alleges that (1) the State violated his constitutional rights by presenting

2

false and misleading testimony and by withholding evidence it had casting doubt on Dr. Ralph Erdmann's autopsy; (2) the trial court's admission of Dr. Erdmann's testimony from Brewer's 1991 trial and decision to permit Dr. Sridhar Natarajan to testify from Dr. Erdmann's report violated Brewer's constitutional rights; (3) trial counsel were ineffective by failing to file a motion seeking the preclusion of Dr. Erdmann's autopsy report and by failing to impeach Dr. Natarajan; (4) counsel failed "to investigate and discuss this issue with [Brewer] prior to advising him to testify"; and (5) the prosecutor should have been recused because he knew about Dr. Erdmann's misdeeds.   DE 31 at 36–58.   Through discovery, Brewer seeks a plethora of records pertaining to Dr. Erdmann and any information the district attorney had regarding Dr. Erdmann.   *See* DE 94 at 20–21.

As the Director showed in her answer and prior response to Brewer's motion for discovery, DE 40 at 56–59; DE 63 at 4–7, there are multiple flaws with Brewer's allegation that warrant the denial of discovery.   First, Brewer's claim that the trial court's admission of Dr. Erdmann's testimony from Brewer's 1991 trial and decision to permit Dr. Natarajan to testify from Dr. Erdmann's report violated Brewer's rights is procedurally defaulted.   DE 40 at 54–55.   Because this Court cannot reach the merits of the claim, discovery must be denied.

Second, with regard to the other claims, the state court properly rejected them on state habeas review, and they are meritless.   DE 40 at 53–59.   As the Director has previously argued, Brewer is seeking discovery for not only a meritless claim, but also an irrelevant claim.   Brewer was retried on punishment, not guilt-innocence.

3

Dr. Erdmann's report and prior testimony pertained to Mr. Laminack's cause of death. Thus, the autopsy was germane only to the extent that it could have affected the punishment proceedings, i.e., if residual doubt had been a viable punishment theme. But there is no doubt that Brewer murdered Mr. Laminack. The evidence conclusively established this fact, and *Brewer admitted at retrial that he killed Mr. Laminack.* DE 40 at 57; 25 RR 82–84, 150–71.[1] If Brewer's guilt or culpability was an issue and the autopsy critical to that issue, then Brewer's claim might have some relevance. But this is not the case.

Brewer has alleged that had this evidence not been admitted, he never would have testified on his own behalf. DE 31 at 56–57. As the Director previously argued, this claim is meritless. DE 40 at 57–58. The record showed that Brewer testified for three reasons: to accept responsibility for the murder and show remorse; to highlight his lack of violent activity while on death row; and to place his poor behavior before the crime into context. *Id.* His claim pertaining to the autopsy is meant to redirect culpability to his accomplice Kristie Nystrom, despite overwhelming evidence to the contrary. DE 31 at 54 (Brewer claiming this strategy "puts some of the onus" on Nystrom). Thus, the jury would have been faced with a defendant still defiant after eighteen years and willing to cast blame elsewhere. This is not a path Brewer's trial attorneys wanted to go down because, per their state habeas hearing testimony, they

---

[1]     "RR" refers to the state record of transcribed trial proceedings from Brewer's 2009 trial, preceded by volume number and followed by page number(s). "SHCR" refers to the state habeas record from Brewer's second state habeas proceeding, preceded by volume number and followed by page number(s). "SHH" refers to the record of the state habeas hearing, preceded by volume number and followed by page number(s).

considered remorse to be crucial and thought belaboring Mr. Laminack's cause of death would damage their credibility.  7 SHCR 2009, 2013; 2 SHH 279–80; 3 SHH 124.  Indeed, trial counsel began his final argument with an immediate and blunt concession that Brewer was guilty of capital murder and damaged the lives of Mr. Laminack's family: "There is no excuse.  There is no justification.  It wasn't a mistake.  It wasn't an accident.  It was capital murder."  25 RR 204–05.

Third, most of the evidence Brewer seeks pertains to incidents involving Dr. Erdmann that occurred well before he was retried, including evidence Brewer concedes was provided to postconviction counsel during his *first* state habeas proceeding.  DE 94 at 20–21; DE 31 at 53–54.  To the extent Brewer claims the prosecution suppressed this evidence, the prosecution cannot conceal matters the defense has known or should have known years before trial.  *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) ("[E]vidence is not suppressed 'if the defendant knows or should know of the essential facts that would enable him to take advantage of it.'") (quoting *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002)).

Fourth, the doctor who testified at Brewer's retrial was Sridhar Natarajan, not Dr. Erdmann.  And Brewer has never shown or even claimed that the autopsy performed *in his case* was problematic, only that Dr. Erdmann's misdeeds in other cases should have rendered it suspect.  DE 94 at 16–20.  Brewer does not raise any similar complaints about Dr. Natarajan, except that he relied on Dr. Erdmann's report.  But Dr. Natarajan also reviewed other evidence in the case, including autopsy photos, protocol, crime scene photos, affidavits, police reports, and the synopsis of the

5

Special Crimes Unit.  23 RR 29–30, 59–60.  He came to his own conclusions about cause and mechanism of death, which Brewer does not challenge.  23 RR 32–33.

In sum, the issue underlying Brewer's discovery request is wholly lacking in merit and is, in fact, immaterial to the outcome of his retrial.  Because Brewer cannot demonstrate that he would be entitled to relief if these facts are fully developed, discovery is unwarranted.  Finally, regarding Brewer's request for information in possession of the district attorney, these documents are not in the possession, custody, control, or care of the TDCJ-CID or the Office of the Attorney General.  Furthermore, the Office of the Attorney General does not represent the district attorney's office in this proceeding.  *See, e.g., Fierro v. Johnson*, 197 F.3d 147, 155–56 (5th Cir. 1999) ("The attorneys for the Texas Department of Corrections in a federal habeas case do not act as prosecutors . . . .").  Should the Court intend to grant Brewer's discovery motion, the document-holding entities and relevant individuals should be notified first and provided a chance to respond—including an opportunity to raise any assertions of privilege or confidentiality that may be applicable.

## II.  Brewer's Request for an Evidentiary Hearing Must Be Denied.

Brewer requests an evidentiary hearing with regard to the following claims: (1) trial counsel were ineffective for failing to challenge expert testimony from Dr. Richard Coons regarding Brewer's future dangerousness (Claim 1 in federal habeas petition); (2) the trial court erred in admitting Dr. Erdmann's prior testimony, and trial counsel were ineffective for failing to challenge the evidence (Claim 2); (3) trial counsel were ineffective for failing to present testimony rebutting evidence

6

of his prior bad acts (Claim 4); (4) trial counsel were ineffective for failing to investigate and present mitigating evidence (Claim 5); and (5) the State suppressed evidence of Kristie Nystrom's medical records that could have shown she had a larger role in the crime (Claim 7). DE 94 at 10–35. Portions of these claims are procedurally defaulted because Brewer raised them in his successive application dismissed for abuse of the writ. *Ex parte Brewer*, No. 46,587-03 at 17–48; *Ex parte Brewer*, 2019 WL 5420444, at *1. These are as follows: (1) trial counsel were ineffective for failing to investigate and rebut testimony from Kevin Lewis about his contact with Brewer in jail and from Ronald Mosher about Brewer's arrest in Florida for possession of a concealed weapon (pertaining to Claim 4), and (2) the State suppressed Nystrom's medical records. DE 94 at 21–28, 32–35. The Fifth Circuit has repeatedly held that Texas's abuse-of-the-writ doctrine is an adequate and independent state ground barring federal habeas review of claims raised in the abusive application. *Garza v. Stephens*, 738 F.3d 669, 675 (5th Cir. 2013); *Balentine v. Thaler*, 626 F.3d 842, 857 (5th Cir. 2010); *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008).

### A.   *Pinholster*[2] precludes a hearing on the claims adjudicated on the merits by the state court.

The majority of the allegations for which Brewer seeks an evidentiary hearing were adjudicated on the merits by the state court, namely Claims 1, 2, half of 4, and 5. *See* DE 40 at 25–31 (citing 10 SHCR 3074–80, 3080–85, 3087–93), 53–54 (citing 10 SHCR 3110–14, 3150–54), 65 (citing 10 SHCR 3083, 3106–07), 71–72 (citing

---

[2]   *Cullen v. Pinholster*, 563 U.S. 170 (2011).

10 SHCR 3117–23), 82 (citing 10 SHCR 3126–27); *Ex parte Brewer*, No. WR-46,587-02, 2014 WL 5388114 (Tex. Crim. App. Sept. 17, 2014) (order largely adopting trial court findings). In fact, Brewer received a two-day evidentiary hearing in state court regarding Claim 1. Under *Pinholster*, Brewer cannot receive a hearing regarding his exhausted claims adjudicated on the merits by the state court.

In *Pinholster*, the Supreme Court made clear that 28 U.S.C. § 2254(e)(2)—the statutory mechanism through which Congress limited a petitioner's ability to obtain a federal evidentiary hearing and to expand the federal habeas record—has no application when a federal court reviews claims pursuant to § 2254(d), even if a petitioner might meet the technical requirements of § 2254(e)(2). 563 U.S. at 184–85 (rejecting the assumption that § 2254(d)(1) has no application when a federal court admits new evidence under § 2254(e)(2)); *see also id*. at 203 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record ... [violated § 2254(d)(1)] our analysis is at an end. We are barred from considering the evidence Pinholster submitted in the District Court that he contends additionally supports his claim."). The Supreme Court reasoned:

> Today, we ... hold that evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.

*Id*. at 185. Therefore, this Court must review the reasonableness of the state court's determination under § 2254(d) with only reference to the record actually before the state court. *Woodfox v. Cain,* 772 F.3d 358, 368 (5th Cir. 2014) ("The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of

8

review under § 2254(d)(1), the record is limited to the one before the state court. . .”). And Brewer cannot receive a hearing with regard to the above claims adjudicated on the merits. *McCamey v. Epps*, 658 F.3d 491, 497–98 (5th Cir. 2011) (recognizing that *Pinholster* limits the discretion of federal courts in holding hearings, concluding that the district court erred in conducting a hearing on claims that fell under § 2254(d), and reviewing the claim only on the record before the state court).   Contrary to Brewer's argument that *Pinholster* does not preclude a hearing, DE 94 at 3–5, multiple federal district courts in Texas have held the opposite. *Woodard v. Davis*, 3:16-CV-2974, 2018 WL 1757657, at *6 (N.D. Tex. Mar. 21, 2018) (petitioner not entitled to evidentiary hearing on exhausted claims because review under § 2244(d)(1) is limited to the record before the state court that adjudicated the claim on the merits), report and recommendation adopted, 3:16-CV-2974-C-BK, 2018 WL 1744809 (N.D. Tex. Apr. 11, 2018); *Hernandez v. Davis*, No. EP-15-CV-51, 2017 WL 2271495, at *44–45 (W.D. Tex. May 23, 2017) (same); *Watson v. Davis*, No. SA-16-CA-090, 2017 WL 3841927, at *3  (W.D. Tex. Aug. 31, 2017) (“[A]s in this case, when a  petitioner's claims have  been  rejected on the merits by  the state courts either  on direct appeal or during petitioner's state habeas corpus proceeding, further factual development in federal court is effectively precluded.”) (citing *Pinholster*).

Brewer argues that neither *Pinholster* nor § 2254(d) preclude a hearing in this case because he has “established that the state court ruling is an unreasonable determination of the facts under § 2254(d)(2).”   DE 94 at 4.  *Pinholster* might be inapplicable where the district court “appropriately and correctly” concludes that the

state court adjudication of the claim is unreasonable under § 2254(d) *based solely* on the state court record. *See Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013). But this Court has not made this determination. And, as demonstrated in the Director's answer, the state court record does not support Brewer's argument. In effect, Brewer actually seeks a hearing to prove the state court adjudication of his claims is unreasonable, which *Pinholster* specifically forbids. Therefore, a hearing on these claims is impermissible.

### B.   A hearing is foreclosed with regard to Brewer's unexhausted claims.

Section 2254(e)(2) "continues to have force" with respect to claims that were not adjudicated on the merits in state court proceedings. *Pinholster*, 563 U.S. at 185–86; *see also McCamey*, 658 F.3d at 497 (noting that § 2254(e)(2) "remains an important tool" where habeas petitioners raise claims not adjudicated on the merits by the state court). Pursuant to § 2254(e)(2), where the applicant has failed to develop the factual basis for a claim in state court, a federal court cannot hold a hearing on the claim unless the applicant shows the legal or factual basis for the claim was previously unavailable *and* the applicant demonstrates that but for constitutional error no reasonable fact-finder would have found the applicant guilty of the underlying offense. (*Michael*) *Williams v. Taylor*, 529 U.S. 420, 432–37 (2000).

Brewer cannot satisfy this standard with regard to his defaulted allegations. Brewer is at fault for not raising these claims in state court because he had the opportunity to raise them in his initial habeas application and did not. *Id.* at 432 (holding that "a failure to develop the factual basis of a claim is not established unless

10

there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel").  And while Brewer claims "the state court prevented the factual development of these claims by rejecting Mr. Brewer's request for an evidentiary hearing based on its unreasonable determination of the facts underlying this request," DE 94 at 5, Brewer never requested a hearing in state court for these defaulted claims prior to filing his successive application.  At any rate, the Fifth Circuit has long held that mere requests for a hearing in state court do not satisfy § 2254(e)(2)'s opening clause.  *See Jones v. Davis*, 890 F.3d 559, 566 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 795 (2019).  Because the remaining prongs apply, a hearing is foreclosed because Brewer has not demonstrated his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable and that he is actually innocent of his crime.  In fact, Brewer could not satisfy these requirements because he was retried on punishment only, not guilt-innocence.  *Cf. Turner v. Epps*, 460 F. App'x 322, 330 (5th Cir. 2012) (holding that successive claim raising only a punishment phase issue cannot meet the actual-innocence provision of § 2244(b)).

Brewer claims that § 2254(e)(2) does not bar a hearing on these defaulted claims because the statute pertains only to hearings on claims and not procedural issues, such as whether a petitioner can demonstrate cause and prejudice to overcome a default.  DE 94 at 6–7.  He further points to *Martinez*[3] and *Trevino*[4] in support of

---

[3]     *Martinez v. Ryan*, 566 U.S. 1 (2012).

[4]     *Trevino v. Thaler*, 569 U.S. 413 (2013).

his argument that a hearing can be held on the procedural bar pertaining to any ineffective-assistance-of-trial-counsel (IATC) claim.  *Id.*

*Martinez/Trevino* do hold that ineffective assistance of state habeas counsel can operate as cause to excuse a procedural default of an IATC claim.  *Martinez*, 566 U.S. at 16–17; *Trevino*, 569 U.S. at 428–29.[5]  But Brewer's arguments are nonetheless unavailing.  He is attempting to utilize the cause and prejudice exception to skirt the statute and obtain a hearing on meritless claims.  A hearing on defaulted constitutional claims is warranted only where there is "'a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented.'"  *Segundo v. Davis*, 831 F.3d 345, 351 (5th Cir. 2016) (quoting *Ayestas v. Stephens*, 817 F.3d 888, 896 (5th Cir. 2016)).  And contrary to Brewer's implicit argument, "*Martinez* and *Trevino* protect Texas habeas petitioners from completely forfeiting an IATC claim; neither entitles petitioners to an evidentiary hearing in federal court in order to develop such a claim."  *Id.*  For the reasons discussed herein and in the Director's previous responses, there is not a factual dispute which, if resolved in Brewer's favor, would entitle him to relief.  Consequently, he is not entitled to a hearing on these claims.[6]  *See Garcia v. Davis*,

---

[5]     The Fifth Circuit has held that *Martinez* and *Trevino* only apply to IATC claims. *See Murphy v. Davis*, 732 F. App'x 249, 257 (5th Cir. 2018); *Vasquez v. Stephens,* 597 F. App'x 775, 778 (5th Cir. 2015); *Reed v. Stephens,* 739 F.3d 753, 778 n.16 (5th Cir. 2014).  And the Supreme Court has limited its holding in *Martinez*.  *Davila v. Davis*, 137 S. Ct. 2058, 2065–70 (2016) (declining to extend *Martinez* to claims of ineffective assistance of appellate counsel).

[6]     Additionally, an evidentiary hearing on the *merits* of Brewer's IATC claims (as opposed to the effectiveness of state habeas counsel for the purpose of determining whether the IATC claims satisfy *Martinez*) is impermissible.  28 U.S.C. § 2254(e)(2); *see Gonzales v.*

704 F. App'x 316, 324 (5th Cir. 2017) ("Because an evidentiary hearing would not have affected Garcia's failure to establish prejudice by counsel's error, the district court did not abuse its discretion in denying an evidentiary hearing on the claim.").

### C.   Nonetheless, Brewer's claims do not merit a hearing.

Ultimately, where a petitioner's claims lack merit on their face, further factual development is not necessitated. *Register v. Thaler,* 681 F.3d 623, 627–30 (5th Cir. 2012) (recognizing district courts possess discretion regarding whether to allow factual development, especially when confronted with claims foreclosed by applicable legal authority).   In cases where a hearing is not barred by 28 U.S.C. § 2254(e)(2), "'the decision to grant such a hearing rests in the discretion of the district court.'" *Richards v. Quarterman,* 566 F.3d 553, 562 (5th Cir. 2009) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 468 (2007)).   "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.   And for claims controlled by § 2254(d), "a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*

### 1.   Ineffectiveness regarding Dr. Coons (Claim 1)

Brewer contends that he should receive a hearing regarding his claim that trial counsel were ineffective "for failing to object to the admission of Dr. Coons's testimony and failing to investigate, develop, or present an alternative expert opinion on

---

*Davis*, 924 F.3d 236, 239 (5th Cir. 2019) ("The district court erroneously granted a hearing on the merits of petitioner's claims and denied relief.").

13

petitioner's future dangerousness[,]" for failing to effectively cross-examine Dr. Coons, and for failing to utilize an expert to rebut Dr. Coons's testimony.  DE 94 at 10–16.  As the Director demonstrated in her answer, this claim is meritless.  First, Dr. Coons's testimony was going to be admitted because Texas law at the time of Brewer's trial provided for the admission of hypothetical testimony regarding future dangerousness.  DE 40 at 35–36.  Second, trial counsel effectively cross-examined Dr. Coons on voir dire eliciting a number of concessions from him favoring Brewer's case.  *Id.* at 36–37.  Brewer even undermines his claim by pointing out what he believes were faulty statements by Dr. Coons on cross-examination.  *Id.* at 37–38.  Third, although Brewer complains that trial counsel failed to utilize the defense's rebuttal witness, Dr. Edens, during voir dire, counsel made a strategic decision not to give Dr. Coons a preview of Dr. Edens's testimony or a chance to refine his testimony to minimize Dr. Edens's criticisms.  *Id.* at 38.  Counsel also acknowledged that Dr. Edens's voir dire testimony would not have altered the trial court's decision about the admissibility of Dr. Coons's testimony.  *Id.*

Regarding counsel's performance during trial, Brewer's claim is equally meritless.   First, on cross-examination, counsel elicited even more favorable concessions from Dr. Coons.  *Id.* at 40–41.  Second, the defense then presented Dr. Edens to rebut Dr. Coons, and his testimony was effective.  For instance, Dr. Edens testified that Dr. Coons's methodology of relying on clinical intuition and subjective impressions to make predictions about future dangerousness is not scientific.  *Id.* at 41.  And during final argument, counsel argued that Dr. Coons's

14

testimony lacked reliability.  *Id.* at 41–42.  Third, Brewer's state habeas counsel, Hillary Sheard, attempted to demonstrate an "effective" cross-examination of Dr. Coons by calling him to the stand during the state habeas hearing.  The cross-examination was such a disaster that the trial court eventually interjected and said to Sheard: "[W]hy are we doing this, and I'm still wondering."  The prosecutor then asserted: "I've been doing this about 30 years, and compared to what she has obtained from the doctor today, comparing that to what came out in the trial, as the Prosecutor, I would have much preferred the jury to have heard this testimony than what was actually brought out in the trial."  *Id.* at 43–44.  Thus, Sheard merely demonstrated why judging counsel's performance via hindsight is disfavored.

Regarding utilizing another expert, Dr. Mark Cunningham, to provide an opinion that Brewer was not dangerous, this claim fails for several reasons.  First, counsel believed another expert evaluation could have opened the door for the State to do an individualized assessment of Brewer, which might be harmful.  *Id.* at 45–46.  Second, counsel believed it would appear hypocritical to the jury to attack Dr. Coons's assessment as unreliable and then present an opinion from another expert on the same topic—whether Brewer was a future danger.  *Id.* at 46–47.  Counsel believed the proper strategy was to draw a contrast between Dr. Coons and Dr. Edens, who did not opine about Brewer's future dangerousness but merely pointed out the flaws with Dr. Coons's methodology.  *Id.* at 47.  Ultimately, Brewer is bickering about trial strategy and whether counsel presented enough witnesses, which is insufficient to demonstrate ineffectiveness.  *Id.* at 47–49.  Third, the Fifth Circuit has rejected the

15

very claim Brewer is raising—that counsel were ineffective for failing to cross-examine and challenge Dr. Coons.  *Id.* at 49–50 (citing *United States v. Fields*, 761 F.3d 443, 463–65 (5th Cir. 2014) (e.g., "trial counsel undertook precisely what Fields argues he failed to do: he attacked Dr. Coons's methodology and techniques.")); *see Devoe v. Davis*, 717 F. App'x 419, 428–29 (5th Cir. 2018).

Finally, there is no need for a hearing regarding this claim given that the state habeas court conducted a thorough hearing on this issue.  As such, *Pinholster* precludes a hearing.  Thus, Brewer's request should be denied.

### 2. Failure to investigate and present readily available evidence rebutting the State's case on future dangerousness (Claim 4)[7]

Brewer requests a hearing regarding his claims that trial counsel were ineffective for failing to investigate and present evidence to rebut the State's case on future dangerousness, namely prior bad acts by Brewer.  DE 94 at 26–33.  This is the claim for which this Court previously granted Brewer's motion to stay and abate, DE 67 & 76, and it pertains to Aimee Long, Kevin Lewis, Ronald Mosher, and Albert Brewer.  DE 94 at 22–25.  Brewer requests a hearing not only on the merits but also on cause to overcome his procedural default.  *Id.* at 26.

Initially, as the Director has twice pointed out, the claims regarding Aimee Long and Brewer's attack on Albert Brewer are in fact exhausted and adjudicated on the merits by the state court.  *See* DE 40 at 62–64; DE 68 at 3.  Long was not

---

[7]      Brewer's next request is actually for a hearing regarding Dr. Natarajan's testimony, which relied in part on Dr. Erdmann's prior autopsy.  DE 94 at 21–26.  The Director addressed the lack of merit regarding this issue in Section I, *supra*.

referenced in the state court findings, however "[t]he presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). These claims are not defaulted and, consequently, a hearing regarding cause is obviously not warranted. Because these claims were adjudicated on the merits, *Pinholster* bars any hearing.

Nevertheless, regarding Long, Brewer claims that had defense counsel questioned Long, she would have provided testimony that Brewer was not dangerous, and his assault on her was out of character for him. DE 94 at 22. But Long testified at trial that Brewer threatened to kill her on several occasions both before and after the assault, that Brewer threatened to kill her new boyfriend, and that her fears of Brewer intensified after the assault. DE 40 at 66–67; DE 68 at 7–8. The trial evidence thoroughly contradicts Brewer's "new" evidence from Long, which this Court cannot consider. It would have made little sense for trial counsel to try to elicit testimony that the act was "out of character" for Brewer when Long's testimony revealed that Brewer's acts and threats were frequent. Cross-examination along these lines would have merely given the State the opportunity to highlight again on redirect examination Brewer's poor behavior. Long's declaration is also suspect because it is essentially a recantation of her trial testimony. The Fifth Circuit has long held that "recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996).

17

Regarding Albert Brewer, Brewer has alleged that trial counsel were ineffective for failing to rebut evidence about Brewer's assault on Albert and for not presenting evidence that Albert was abusive toward others in the family.  DE 31 at 71–73; DE 94 at 24.  He supported this claim with declarations from Billie Anne Young, Faye Brewer, Brenda Brewer, and Corrie Brewer that were not presented to the state court and are barred under *Pinholster*.  DE 31 at 73.  Nonetheless, trial counsel called Karon Brewer, Billie Anne Young, and Brewer himself.  They testified that Albert was abusive and started the fight that led to Brewer hitting Albert because he was only protecting his mother.  DE 40 at 68; DE 68 at 9–10.  Further, the 1991 testimony from Lt. Lepicier that was read into the record revealed that Albert likely started the fight, was abusive toward Brewer and his mother, and was a problem drinker.  *Id.*  Moreover, Karon Brewer testified that Albert "was mean to [Brewer], so abusive."  Brewer also witnessed physical violence between his parents on a number of other occasions.  24 RR 85–90.  Billie Anne testified that she witnessed fights between Albert and Brewer.  She would come out of her room and "they'd be fighting, in a headlock, hitting."  She also recalled "Albert hitting Brent, just beating him up one day."  24 RR 100.  Brewer testified that Albert would get mad at his mother and they "would all pay for it."  Albert was physically and emotionally abusive toward Karon.  Albert would grab Karon around her throat or pull her hair and swing her around.  On one occasion, Albert nearly broke Brewer's nose with a piece of wood, resulting in his arrest.  25 RR 58–59, 62.  Thus, the jury knew that Albert was an abusive man.  It is settled that counsel's failure to present cumulative evidence is

inadequate to demonstrate ineffective assistance.  *Norman v. Stephens*, 817 F.3d 226, 233 (5th Cir. 2016).  Moreover, as the Fifth Circuit has admonished, arguments that come down to a matter of degrees, i.e., that counsel failed to investigate and present "enough" mitigating evidence, "are even less susceptible to judicial second-guessing." *Ward v. Stephens*, 777 F.3d 250, 265 (5th Cir. 2015).

Regarding Ronald Mosher, Brewer raised a defaulted claim that trial counsel were ineffective for failing to interview Mosher about Brewer's arrest for possession of a concealed weapon in Florida.  DE 31 at 69–70.  Mosher, who testified at trial, was the arresting officer.  Brewer was a driver for Amy Valles and her husband—who sold drugs—and he was in the driver's seat while Valles was in the passenger seat. When Mosher approached the car, he saw a knife located between the driver's seat and the console and arrested Brewer.  22 RR 232–38.  In his subsequent declaration, Mosher stated that he arrested Brewer because the knife was closest to him, but it was just as accessible to Valles.  Brewer did not make any statements about who owned the knife, and he did not resist, make threats, or act violently.  DE 19-5 at 41. But Mosher testified at trial that he arrested Brewer because of where the knife was located: between the driver's seat and the console.  22 RR 236–37.  On cross-examination, Mosher stated that Brewer was cooperative when Mosher approached him, that Brewer remained cooperative during his arrest, and that the car belonged to Valles and her husband.  22 RR 239.  Mosher's declaration states essentially the same; it adds nothing of significance.  Further, Brewer testified at trial that the knife was not his; he pled guilty to the offense to avoid going to trial and receiving a longer

sentence.  25 RR 129–31.  In short, contrary to Brewer's claim, the trial testimony about this particular event was hardly significant.

Regarding inmate Kevin Lewis, Brewer raised a defaulted claim that trial counsel were ineffective for failing to interview Lewis.  In Brewer's 1991 trial, Lewis testified that he got into an argument with Brewer, and Brewer threatened to stab him in the eye with a pencil.  18 RR 706–07.  Brewer stated in his amended petition that Lewis's 1991 testimony was admitted at his retrial, but that had trial counsel interviewed Lewis, Lewis would have testified that he started the fight and not Brewer.  DE 31 at 70–71.  Brewer supported his claim with a declaration from Lewis in which he also stated that Brewer remained calm during the incident and that Brewer had no problems with any other inmates or guards.  DE 19-5 at 33–34.  But Lewis testified at the retrial about comments Brewer made regarding murdering Mr. Laminack and about whether he, Lewis, knew some individuals who had knowledge of the murder.  22 RR 92–103.  Lewis *did not* testify about the fight between him and Brewer.  Moreover, Brewer's allegation is premised on the transcript of Lewis's 1991 testimony, which Brewer claims was introduced into evidence during the retrial.  But Lewis's 1991 testimony is not among the listed exhibits and was never read into the record.  *See* DE 68 at 13 & n.7.  During closing arguments, the State did not mention Lewis, let alone this fight, and defense counsel pointed out that if Brewer had engaged in bad or violent behavior in prison, the State would have presented it.  25 RR 195–204, 207, 217–24.  In other words, this is an immaterial issue.  Further, testimony from Lewis that Brewer had no problems with

other inmates or guards would have been redundant because trial counsel presented testimony from three correctional officers all of whom stated they had contact with Brewer and did not recall him causing any problems.  24 RR 74–76, 105–07; 25 RR 19–23.  Again, trial counsel is not ineffective for failing to present cumulative evidence.

In sum, these are all meritless claims, and a hearing to determine cause to overcome Brewer's default regarding the latter two is not warranted given the lack of significance of this evidence.  *See Nelson v. Davis*, --- F.3d ---, 2020 WL 1181516, at *4–9 (5th Cir. March 12, 2020) (affirming the district court's denial of funding to develop IATC claim, despite assuming the petitioner's new evidence rendered the claim unexhausted, because it was not debatable that the claim was insubstantial).

### 3.      Failure to present mitigating evidence (Claim 5)

Brewer seeks a hearing regarding his claim that trial counsel were ineffective for failing to investigate and present mitigating evidence "of Mr. Brewer's sexually traumatic experiences, his father's violence and depravity, and his mental illnesses[.]"  DE 94 at 29.  As the Director stated in her answer, this claim was adjudicated on the merits by the state court, which issued lengthy findings, and the CCA denied relief based on these findings.  DE 40 at 71–72.  Although Brewer presents new declarations in support of this claim, this Court's review is limited to the record before the state court under *Pinholster*, and a hearing is barred.

Regardless, a hearing is not warranted because this claim does not merit relief. The Director thoroughly addressed this claim in her answer and need not repeat the

same arguments here.  DE 40 at 72–80.  But to briefly recap: (1) much of the evidence Brewer argues counsel failed to offer was in fact presented at trial in one form or another; (2) some of Brewer's new evidence is contradicted by evidence presented at trial; (3) evidence pertaining to Brewer's sexual experiences was insignificant—even according to his expert, some of it was not unusual—and does not mitigate his heinous murder; (4) evidence regarding what Albert did to some of Brewer's relatives is not relevant to *Brewer's* character; and (5) evidence of Brewer's alleged mental problems is based on an assessment by Dr. Cunningham, whom trial counsel did not want to call, evidence of these problems is mixed, and Dr. Cunningham's assessment references poor judgment, impulsivity, and various psychological predispositions, all of which are potentially damaging to Brewer.  Thus, even if *Pinholster* did not bar a hearing on this claim—and it does—a hearing would still not be warranted. *See Nelson v. Davis*, 2020 WL 1181516, at *4–9.

### 4.    Allegedly suppressed medical records pertaining to Nystrom (Claim 7)

Brewer seeks a hearing regarding his claim that the State suppressed Kristie Nystrom's medical records which, according to Brewer, would have "raised doubts" that her role in the murder was minor and that she was prone to dishonesty, overdramatization, and blaming others.  DE 94 at 32.  Brewer raised this claim in his application dismissed for abuse of the writ, thus he seeks a hearing on the merits of the claim and cause to overcome his default via *Banks v. Dretke*, 540 U.S. 668, 691 (2004).  But Brewer also appears to blame state habeas counsel for failing to present this claim in his initial state habeas application.  DE 94 at 34.  As explained on page

12 and footnote 5 above, the *Martinez/Trevino* equitable exception that allows ineffective assistance of habeas counsel to operate as cause to excuse a default only applies to IATC claims; the Supreme Court and Fifth Circuit have never extended this exception to other allegations.

Nonetheless, a hearing is not warranted because Brewer's claim has no merit. At Brewer's original trial in 1991, Nystrom's records were sealed by the trial judge because he did not see their relevance since Nystrom did not testify at the first trial. At the retrial, defense counsel requested to review them because Nystrom would be testifying. The judge advised the defense that he would make a decision on their request prior to cross-examination. When the State ended their direct examination of Nystrom, the judge asked Nystrom if she would give the defense permission to review her records. She responded, "No." The judge, having reviewed the records in camera, left them sealed because he found no relevance to them "or very little that's even remotely helpful." DE 40 at 83–84 (citing 22 RR 159–63, 226).

Because nothing was suppressed, Brewer is not raising a valid claim under *Brady v. Maryland*, 373 U.S. 83 (1963). Nystrom's medical records were not even in the State's possession; they were under seal with the trial court. The defense obviously knew this because counsel sought a ruling from the court. *See United States v. Agurs*, 427 U.S. 97, 103 (1976) (*Brady* applies to "information which had been known to the prosecution but unknown to the defense"). Brewer, however, states "the record contradicts this assertion, and suggests that trial prosecutor Mr. Farren possessed the records and handed a copy to the judge when he requested them."

DE 94 at 33 (citing 22 RR 163). This may be true, but Brewer also ignores the following statement from defense counsel when the matter was discussed:

> It's our understanding Ms. Nystrom is coming next, and there are records of hers . . . from the Big Spring Hospital, Your Honor. It is our understanding that they are here. *In fact, Mr. Odiorne in looking at the exhibits, picked them up, realized what they were, put them back down, because it's our understanding that they are under seal.* And so she is now testifying, and we would like to be able to look at those records before cross of her.

22 RR 160 (emphasis added). Thus, the defense had access to them, at least momentarily, but did not look at the records believing they were under seal. The issue here is the trial court's decision to seal records, not suppression by the State.

Moreover, Brewer's claim fails because he is arguing that the evidence was crucial to place more blame on Nystrom. As stated above, defense counsel said they had no intention of implementing a blame-shifting strategy. Trying to point the finger at Nystrom when it is clear Brewer committed the murder would have only damaged the defense's credibility. And the idea that the evidence was needed to undermine Nystrom's credibility is illogical given that Nystrom was Brewer's accomplice and is serving a life sentence for this crime. Thus, the jury had all the evidence it needed to question her credibility.

In sum, Brewer is seeking a hearing to develop meritless claims. Even if *Pinholster* and § 2254(e)(2) did not preclude a hearing, a hearing would not be warranted given the above evidence. Moreover, Brewer's motion seeks to merely supplement evidence already before the Court or as a fishing expedition with the hope of discovering something new. A hearing is not merited on these grounds. *Segundo*,

24

831 F.3d at 351; *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (rules governing discovery and a hearing do not authorize fishing expeditions).

## III.   Notice of Failure to Comply with Scheduling Order

On December 20, 2019, this Court issued a new scheduling order stating: "On or before March 3, 2020, Petitioner *shall file*, and serve on the Criminal Appeals Division of the Office of the Texas Attorney General, his second amended federal habeas corpus petition in this cause." DE 93 at 1 (emphasis added). That date has passed, and Brewer has not filed any amended petition. Perhaps Brewer intends to rely on his prior petition, but (1) the Director has not found any language in the instant motion revealing this is Brewer's intent, and (2) this Court's scheduling order appears mandatory, not discretionary. Thus, Brewer has failed to comply with this Court's scheduling order.[8]

**CONCLUSION**

The Director respectfully requests that Brewer's motion for discovery and an evidentiary hearing be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General for
Criminal Justice

---

[8]   The Director also notes that Brewer's motion is 36 pages in length, which does not comply with Northern District Local Rule 7.1(d) and 7.2(c). Brewer did not seek leave to exceed the page limitations.

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


 /s/ Erich Dryden

*ERICH DRYDEN

*Attorney-in-Charge          Assistant Attorney General
State Bar No. 24008786

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
(512) 320-8132 (Fax)

ATTORNEYS FOR RESPONDENT


## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing Respondent Davis's Response in Opposition to Renewed Motion for Discovery and Evidentiary Hearing has been served electronically to Philip Wischkaemper, Shawn Nolan, and Peter Walker, counsel for the petitioner, on this the 16th day of March, 2020.


/s/ Erich Dryden
ERICH DRYDEN
Assistant Attorney General