IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

|  |  |
|---|---|
| **BRENT RAY BREWER,** | : |
| Petitioner, | : |
| v. | : NO. 2:15-CV-50-J |
|  | : CIVIL ACTION |
| **LORIE DAVIS,** | : |
| **Director, Criminal Institutions Division,** | : **THIS IS A CAPITAL CASE** |
| **Texas Department of Criminal Justice,** | : |
| Respondent. | : |

**SUPPLEMENTAL AUTHORITY IN SUPPORT OF AMENDED PETITION
FOR WRIT OF HABEAS CORPUS:** *ANDRUS V. TEXAS*, **590 U.S. \_\_, 2020 WL 3146872,
DECIDED ON JUNE 15, 2020.**

Petitioner Brent Brewer, through undersigned counsel, respectfully submits as supplemental authority a recent decision of the United States Supreme Court, *Andrus v. Texas*, 590 U.S. \_\_\_, 2020 WL 3146872 (June 15, 2020) (attached as Exhibit A), for this Court's consideration. *Andrus* is directly on point with a number of claims raised by Mr. Brewer.

In *Andrus*, the United States Supreme Court found that trial counsel rendered ineffective assistance of counsel by failing to investigate and present readily available mitigating evidence and by failing to conduct any investigation into the State's aggravating factors. Specifically, the Court stated:

> Here, the habeas record reveals that Andrus' counsel fell short of his obligation in multiple ways: First, counsel performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence. Second, due to counsel's failure to investigate compelling mitigating evidence, what little evidence counsel did present backfired by bolstering the State's aggravation case. Third, counsel failed adequately to investigate the State's aggravating evidence, thereby forgoing critical opportunities to rebut the case in aggravation. Taken together, those deficiencies effected an unconstitutional abnegation of prevailing professional norms.

*Id.* at *21. The Court found that counsel rendered deficient performance. However, because the Court concluded that the state court failed to conduct a prejudice analysis, it remanded the case back to the Texas Court of Criminal Appeals for a prejudice determination.

      A.    *Andrus'* Applicability to Claim IV.

In Claim IV of his Amended Petition, Mr. Brewer asserts, in part, that trial counsel rendered ineffective assistance by failing to conduct an investigation into the prior bad acts introduced by the State on the issue of future dangerousness. Specifically, he argued "because trial counsel failed to take this rudimentary investigative step, the State's case on future dangerousness, which was the crux of the its argument supporting the death penalty, went unchallenged and left the jury with no choice but to find this statutory aggravating factor." *See Second Amended Petition for Writ of Habeas Corpus* (ECF 103 at 73) (hereinafter "Second Amended Petition"). *Andrus* is remarkably similar to this case.

In *Andrus*, the State presented evidence that:

> [A]ndrus had displayed aggressive and hostile behavior while confined in a juvenile detention center; that Andrus had tattoos indicating gang affiliations; and that Andrus had hit, kicked, and thrown excrement at prison officials while awaiting trial. The State also presented evidence tying Andrus to an aggravated robbery of a dry-cleaning business. Counsel raised no material objections to the State's evidence and cross-examined the State's witnesses only briefly.

*Andrus*, 2020 WL 3146872 at *15. Similarly, in Mr. Brewer's case, the State painted the picture of an escalating pattern of violence starting as young boy. It alleged that in a fit of anger, he temporarily paralyzed the arm of a former high school girlfriend, carried large knifes, threatened to stab another inmate in the eye pretrial, and, for no reason, beat his father with a broom stick causing brain damage.

In his Second Amended Petition for Writ of Habeas Corpus, Petitioner detailed for this Court the readily available evidence that a reasonably competent investigation would have uncovered that provides both a factual counterweight to the State's future dangerousness case and much needed context, placing the supposed bad acts in a much more accurate and less damaging light. *See*

*Second Amended Petition* (ECF 103 at 73-85); *see also* Decl. of Anthony Odiorne, Esq. (ECF 19-5 at 66); Decl. of Rob Cowie, Investigator (ECF 19-5 at 1); Decl. of Kevin K. Lewis (ECF 19-5 at 33); Statement of Aimee D. Long (ECF 19-5 at 35); Decl. of Billie Ann Young (ECF 19-5 at 4); Decl. of Ammy Valles (ECF 19-5 at 44); Decl. of Corrie Brewer (ECF 19-5 at 21); Decl. of Susan Brewer (ECF 19-4 at 71).

> For example, as this Court has already noted:
>
> Brewer also states that trial counsel admits that the defense team did not interview Ms. Long, she provides the type of evidence the jury should have heard and there was no strategic or tactical reason for not conducting this investigation. Brewer argues that had the defense team interviewed Long, she would have testified that Brewer was not dangerous, that the incident was "out of character" for him, and she believed he did not intend to hurt her. This additional evidence would have had some mitigating value regarding the bad act.
>
> The presented bad acts also included Brewer's assault on his father with a broomstick that caused his father to suffer brain damage. Trial counsel attempted to counter this evidence with Brewer's own testimony that was corroborated only with the testimony of his mother that Brewer was protecting her from his father's attack. Brewer complains that trial did not, but could have, questioned Brewer's mother about the depth of violence in their home or in her relationship with her husband, or about the violence inflicted on Brent by his father. Brewer also identifies other witnesses that trial counsel could also have used to corroborate Brewer's testimony that included chilling stories of unprovoked and unpredictable violence by Brewer's father from his prior wives and children. Again, the absence of this mitigating evidence is alleged to have been due to trial counsel's failure to investigate it.

*Findings, Conclusions and Recommendation to Grant Petitioner's Motion to Stay and to Stay Proceedings* (ECF 67 at 9-10) (citations omitted). This Court concluded that "[E]ach of the items of omitted evidence, if true, would have had some mitigating value regarding the related bad acts. Brewer has presented evidence that trial counsel had no strategic reason for not investigating such bad acts and presenting such mitigating evidence." *Id.* at 11; *see also* Decl. of Anthony Odiorne, Esq., ¶¶ 12, 13, 14 (ECF 19-4 at 66).

If Mr. Brewer's attorneys had "genuinely investigated" the State's case in aggravation, they would have been able to present a powerful "counter narrative" to the jury. *Andrus*, 2020 WL

3146872 at *26. But instead, like counsel in *Andrus*, trial counsel in this case "[l]eft all of that aggravating evidence untouched at trial[.]" *Id.* Counsel's failure to investigate the state's case in aggravation in this case is all the more egregious when juxtaposed with counsel's statement that: "Our theory of defense was that Mr. Brewer did not pose a future danger. We felt very strongly that this was a near slam dunk given Mr. Brewer's nineteen years of nearly impeccable conduct while incarcerated." Dec. of Anthony Odiorne, Esq., ¶ 9 (Doc. 19-4 at 67).

In *Andrus*, the "State's case in aggravation also highlighted Andrus' alleged commission of a knifepoint robbery at a dry-cleaning business." 2020 WL 3146872 at *26. Counsel did nothing to rebut this evidence "[b]ecause *Andrus'* counsel concededly had not independently investigated the incident." *Id.* at *27. The Court found that had counsel investigated, he "would have discovered that the only evidence originally tying Andrus to the incident was a lone witness statement, later recanted by the witness," and a tainted photo array replete with "reliability concerns." *Id.* This mirrors counsel's failure in this case to investigate the alleged assault of Ms. Aimee D. Long and of Mr. Brewer's father, the incident involving another inmate and his arrest for possession of a knife in Florida. All of these incidents had a counter-narrative that would have negated their use as indicia of future dangerousness.

Like *Andrus*, where counsel's "[f]ailures…fettered the defense's capacity to contextualize or counter the State's evidence of Andrus' alleged incidences of past violence," 2020 WL 3146872 at *1, Mr. Brewer's attorney failed – admittedly – to conduct any investigation into the State's aggravating factors. *See* Decl. of Anthony Odiorne, Esq., ¶¶ 9, 11 (Doc. 19-4 at 67); Decl. of Rob Cowie, Investigator, ¶ 6 (Doc. 19-5 at 1).

Thus, as in *Andrus,* where "counsel also failed to conduct any independent investigation of the State's case in aggravation, despite ample opportunity to do so[]," Mr. Brewer's attorneys "[c]ould not, and did not, rebut critical aggravating evidence." 2020 WL 3146872 at *26. Like

counsel in *Andrus*, trial counsel's failure in this case to investigate the State's case in aggravation "[r]einforces counsel's deficient performance." *Id.* (citing *Rompilla v. Beard*, 545 U.S. 374, 385 (2005) ("[C]ounsel ha[s] a duty to make all reasonable efforts to learn what they ca[n] about the offense[s]" the prosecution intends to present as aggravating evidence")).

Because counsel in this case, like the attorney in *Andrus*, failed to "[c]onduct even a marginally adequate investigation, counsel not only 'seriously compromise[ed his] opportunity to respond to a case for aggravation,' *Rompilla*, 545 U.S. at 385, but also relinquished the first of only two procedural pathways for opposing the State's pursuit of the death penalty." *Andrus*, 2020 WL 3146872 at *28. And, as the Court concluded in *Andrus,* "[T]here is no squaring that conduct, certainly when examined alongside counsel's other shortfalls, with reasonable judgment." *Id.*

As in *Andrus*, Mr. Brewer's trial counsel rendered deficient performance. Mr. Brewer seeks an evidentiary hearing in order to present this evidence and demonstrate that he also suffered prejudice, entitling him to relief.

### B.     *Andrus'* Applicability to Claim V.

In Claim V of his *Second Amended Petition for Writ of Habeas Corpus*, Mr. Brewer alleged that "trial counsel's failure to investigate, develop, and present compelling mitigating evidence violated [his] right to effective assistance." *Second Amended Petition* (ECF 103 at 79). Specifically, Mr. Brewer alleged that trial counsel ignored numerous "red flags of mental illness" and failed to investigate and present the readily available evidence of his "chaotic, violent upbringing, or the emotional and physical abuse he suffered at the hands of his mother and father." *Id.*

In *Andrus*, the Supreme Court found that, as in this case, "[c]ounsel performed almost no mitigation investigation, overlooking vast tranches of mitigating evidence." 2020 WL 3146872 at *21. The Court noted that "[A]lthough counsel nominally put on a case in mitigation in that counsel in fact called witnesses to the stand after the prosecution rested, the record leaves no doubt

that counsel's investigation to support the case was an empty exercise." *Id.* In Mr. Brewer's case, the defense presentation could best be described as nominal: "The defense called only three witnesses to testify regarding any aspects of Mr. Brewer's life before his incarceration – Mr. Brewer's sister, his mother, and Mr. Brewer himself." *Second Amended Petition* (ECF 103 at 82). The testimony of his mother and sister combined lasted a mere twenty minutes. *Id.*

In *Andrus*, "[c]ounsel was, by his own admissions at the habeas hearing, barely acquainted with the witnesses who testified during the case mitigation. Counsel acknowledged that the first time he met Andrus' mother was when she was subpoenaed to testify, and the first time he met Andrus' biological father was when he showed up at the courthouse to take the stand." 2020 WL 3146872 at *21. Similarly, in Mr. Brewer's case, the attorney responsible for presenting one of the three mitigation witnesses, Billie Ann, admits that he only met her for the first time the night before she testified. *See* Decl. of Anthony Odiorne, Esq., ¶ 23 (ECF 19-4 at 66).[1]

In *Andrus*, trial counsel presented defendant's mother to testify mainly about "biographical information and did not reveal any difficult circumstances in Andrus' childhood." 2020 WL 3146872 at *15. In this case, Mr. Brewer's attorney asked Brewer's mother one general question about his relationship with his father and got back one sentence which included that "his father was mean to him, so abusive." 24 RR 85. Trial counsel also told the jury during opening statement that Mr. Brewer had a "basically normal childhood." 21 RR 15; *Second Amended Petition* (ECF 103 at 82). In both cases, counsel was woefully wrong.

The Court in *Andrus* found that the "[T]he evidence revealed a childhood marked by extreme neglect and privation, a family environment filled with violence and abuse." 2020 WL 3146872 at *17. Additionally, the Court noted that the trial court characterized Andrus' evidence as a

---

[1] Mr. Odiorne stated: "I was also responsible for presenting the testimony of Mr. Brewer's sister, Billie Ann Bartlett. I regret that I did not spend much time with the family and only met Ms. Bartlett for the first and only time the night before she testified. Ms. Bartlett lived out of state and I was not given authorization by my superiors to travel out to meet her. There was no strategic or tactical reason for not meeting with her earlier and more often." *Id.* at ¶ 23.

"tidal wave of information . . . with regard to mitigation." *Id.* In *Andrus*, the Court found that "counsel ignored pertinent avenues for investigation of which he should have been aware and was indeed aware." *Id.* at *22. Indeed, the Court noted that "materials prepared by a mitigation expert well before trial had pointed out that Andrus had been diagnosed with affective psychosis, a mental-health condition marked by symptoms such as depression, mood lability, and emotional dysregulation." *Id.* at *22-23.

Similarly, in Mr. Brewer's case, "counsel [also] ignored pertinent avenues for investigation of which he should have been aware and was indeed aware":

> [T]rial counsel's failure to investigate and present the powerful details of Petitioner's childhood and background was particularly unreasonable in light of the tremendous head start they were given in this case. Amongst trial counsel's files was the report of Dr. Mark D. Cunningham, a forensic psychologist who evaluated Mr. Brewer in the mid-1990's as part of post-conviction litigation following the 1991 trial. The report provided a roadmap for a mitigation presentation containing a compelling narrative of the neglect, abuse and abandonment Mr. Brewer suffered in his early years, followed by the abject violence and instability that accompanied his father's reintroduction to his life. The report laid out compelling details that several witnesses could provide, including Mr. Brewer's half-sister, Billie Ann Young.

*Second Amended Petition* (ECF 103 at 81-82). Indeed, trial counsel has admitted that the defense team were aware of Dr. Cunningham's report well in advance of trial and did not have Mr. Brewer evaluated by a mental health professional:

> We also did not have Mr. Brewer evaluated by a mental health professional. We were aware that he had been previously evaluated by Dr. Mark Cunningham, Ph.D., a clinical and forensic psychologist on behalf of post-conviction counsel in the late 1990's and that there was a detailed report, complete with a narrative of Mr. Brewer's psycho/social history and diagnoses. I do not recall any discussions amongst the defense team regarding the Cunningham narrative. This is the type of evidence I would have wanted to present to the jury, albeit possibly through a different expert…Nor did we have a strategic or tactical reason for not investigating the leads contained in Dr. Cunningham's report.

Decl. of Anthony Odiorne, Esq., ¶ 16 (ECF 19-4 at 66); *see also* Decl. of Rob Cowie, Investigator ¶ 11 (ECF 19-5 at 1) ("We were also aware that Dr. Mark Cunningham had conducted a detailed evaluation of Mr. Brewer in 1998 for his then post-conviction attorneys . . . We knew that Mr.

Brewer, who had been released from Big Spring Psychiatric Hospital shortly before the murder of Mr. Laminack, had been diagnosed by Dr. Cunningham as suffering from Major Depressive Disorder, Recurrent, and a number of other psychiatric conditions").

The Court in *Andrus* concluded that "[C]learly, the known evidence would have led a reasonable attorney to investigate further. Yet counsel disregarded, rather than explored, the multiple red flags." 2020 WL 3146872 at *23. The Court added that "[S]imply put, the scope of counsel's mitigation investigation approached nonexistent." *Id.* at *24. The same logic applies in this case: Mr. Brewer's counsel ignored numerous red flags and conducted virtually no investigation into the readily available mitigating evidence. As in *Andrus*, the record in this case demonstrates deficient performance and prejudice.

Mr. Brewer is entitled to a new sentencing hearing.

Respectfully submitted,

/s/Phillip Alan Wischkaemper
PHILIP ALAN WISCHKAEMPER
 TX Bar No. 21802750
Law Office of Philip Wischkaemper 915 Texas Avenue
Lubbock, TX 79401
(806)763-9900
miglit@aol.com

/s/ Peter Walker
PETER WALKER TX Bar No. 24075445
SHAWN NOLAN PA Bar No. 53565
Assistant Federal Defenders
Federal Community Defender
   for the Eastern District of Pennsylvania
Suite 545 West, The Curtis
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
peter_walker@fd.org
shawn_nolan@fd.org

Dated: July 8, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served the foregoing on the following person by ECF filing:

Erich Dryden
Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548
Austin, Texas 78711-2548

/s/ Peter Walker
Peter Walker

Dated: July 8, 2020