UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BRENT RAY BREWER, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 2:15-CV-50-Z-BR |
| § | |
| LORIE DAVIS, Director, § | |
| § | |
| Respondent. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE MAGISTRATE JUDGE REGARDING
### MOTION FOR DISCOVERY AND EVIDENTIARY HEARING

The matters before the Court are (1) Petitioner's motion for discovery and for an evidentiary hearing, filed on January 9, 2020 (ECF no. 94), (2) Respondent's response to Petitioner's motion, filed on March 16, 2020 (ECF no. 97), and (3) Petitioner's reply to Respondent's response, filed on March 30, 2020 (ECF no. 100).

### I. Background

Petitioner and a co-defendant were separately convicted in 1991 in connection with the fatal stabbing of Robert Laminack in the course of a robbery. The Texas Court of Criminal Appeals ("TCCA") affirmed Petitioner's capital murder conviction and sentence of death. *Brewer v. State*, AP-71,307 Tex. Crim. App. June 22, 1994). The TCCA subsequently denied Petitioner's initial application for state habeas corpus relief. *Ex parte Brewer*, 50 S.W.3d 492 (Tex. Crim. App. 2001).

This Court granted federal habeas corpus relief as to Petitioner's sentence after concluding the state trial court's punishment phase jury instructions violated Petitioner's federal constitutional rights. *Brewer v. Dretke*, 2004 WL 1732312 (N.D. Tex. Aug. 2, 2004). The United States Court

of Appeals for the Fifth Circuit reversed. *Brewer v. Dretke*, 410 F.3d 773 (5th Cir. 2005), *superseded* 442 F.3d 273 (5th Cir. 2006). The United States Supreme Court granted certiorari and reversed the Fifth Circuit. *Brewer v. Quarterman*, 550 U.S. 286 (2007). The Fifth Circuit then remanded to this Court for entry of judgment. *Brewer v. Quarterman*, 512 F.3d 210 (5th Cir. 2007).

After a retrial as to punishment in 2009, the jury answered the Texas capital sentencing special issues in a manner favorable to the prosecution and Petitioner was once more sentenced to death. The TCCA again upheld Petitioner's sentence. *Brewer v. State*, AP-76,378, 2011 WL 5881612 (Tex. Crim. App. Nov. 23, 2011). The TCCA subsequently denied Petitioner's second state habeas corpus application. *Ex parte Brewer*, WR-46,587-02, 2014 WL 53881114 (Tex. Crim. App. Sept. 17, 2014).

Petitioner returned to this Court, which granted his motion for a stay and to hold this case in abeyance while he returned to state court to exhaust state habeas corpus remedies on new claims. *Brewer v. Davis*, 2018 WL 4585357 (N.D. Tex. Sept. 25, 2018).

The TCCA subsequently dismissed Petitioner's new claims under state writ-abuse principles. *Ex parte Brewer*, WR-46,587-03, 2019 WL 5420444 (Tex. Crim. App. Oct. 23, 2019).

Since filing his motion for discovery and an evidentiary hearing, Petitioner filed his Second Amended Petition on March 30, 2020. (ECF no. 103).

## II. Analysis of Petitioner's Operative Pleading

Petitioner's Second Amended federal habeas corpus petition includes numerous multifarious claims, including his first claim, which asserts separate but intermingled claims premised upon the state trial court's allegedly erroneous admission of expert testimony, the Supreme Court's holdings in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405

U.S. 150, 153-54 (1972), and *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959), as well as at least four different assertions of ineffective assistance by Petitioner's 2009 trial counsel during Petitioner's 2009 retrial as to punishment. (ECF no. 103, at pp. 11-36).

In his second claim for relief, Petitioner presents another multifarious claim complaining about the state trial court's alleged erroneous admission of Petitioner's victim's autopsy report, a distinct *Giglio/Napue* claim, and five different assertions of ineffective assistance by his 2009 trial counsel. (ECF no. 103, at pp. 37-59).

In his third claim, Petitioner presents a claim of ineffective assistance by his most recent state appellate counsel. (ECF no. 103, at pp. 59-63). In his fourth claim, Petitioner argues his 2009 trial counsel rendered ineffective assistance in at least three ways in connection with evidence of future dangerousness. (ECF no. 103, at pp. 64-78). In his fifth claim, Petitioner argues his 2009 trial counsel rendered ineffective assistance by failing to adequately investigate Petitioner's background and present available mitigating evidence regarding Petitioner's background, particularly his mental health, and the role of Petitioner's co-defendant in the capital offense. (ECF no. 103, at pp. 79-109). In his sixth claim, Petitioner argues redundantly that his trial counsel rendered ineffective assistance by failing to adequately investigate the offense and present available evidence showing that Petitioner's co-defendant had a larger role in the offense than described by Petitioner in his 2009 trial testimony. (ECF no. 103, at pp. 109-10).

In his seventh claim, Petitioner presents yet another multifarious claim which includes assertions that (1) the state trial court erred in failing to turn over the mental health records of Petitioner's co-defendant to Petitioner's 2009 trial counsel, (2) the prosecution violated the rule in *Brady* by tendering the co-defendant's mental health records to the state court for in camera review,

3

and (3) Petitioner's 2009 trial counsel rendered ineffective assistance by failing to obtain the same mental health records independently. (ECF no. 103, at pp. 110-13).

In his eighth group of claims, Petitioner argues that (1) the prosecution presented false and misleading evidence regarding the conditions of confinement within the Texas Department of Criminal Justice ("TDCJ"), (2) his trial counsel rendered ineffective assistance by failing to rebut this false evidence, and (3) his most recent state appellate counsel rendered ineffective assistance by failing to raise a point of error on direct appeal asserting these *Giglio/Napue* and ineffective assistance claims. (ECF no. 103, at pp. 114-19). In his ninth claim, Petitioner presents a cumulative error theory of relief. (ECF no. 103, at p. 119). In his tenth group of claims, Petitioner argues (1) the Texas capital sentencing scheme and his 2009 jury instructions violated multiple federal constitutional principles, (2) the state trial court erred in overruling numerous defense objections to the Texas capital sentencing special issues and the 2009 jury charge, and (3) Petitioner's most recent state appellate counsel rendered ineffective assistance by failing to assert this matters as points of error on direct appeal. (ECF no. 103, at pp. 120-24). In his eleventh claim, Petitioner argues cryptically that the state trial court erred in failing to excuse for cause thirteen named members of the jury venire as "unqualified." (ECF no. 103, at p. 124).[1] In his twelfth claim, Petitioner argues the state trial court erred in failing to strike two members of the jury venire who ultimately sat on his 2009 jury and in failing to strike several additional venire members against whom Petitioner's trial counsel were forced to exercise peremptory strikes. (ECF no. 103, at p. 125).[2] In his thirteenth claim, Petitioner argues that (1) the failure of the State of Texas to grant

---

[1] Petitioner does not allege whether his 2009 trial counsel ever challenged any of these venire members for cause.

[2] Once again, Petitioner does not allege any specific facts showing that is 2009 trial counsel made challenges for cause to any of these venire members.

him a new trial as to both his conviction and sentence following the federal courts' overturning of his sentence violates ex post facto principles because Texas statutes authorizing a partial retrial as to punishment only were enacted after his capital offense and after his conviction and (2) his trial and state appellate counsel rendered ineffective assistance by failing to raise this claim. (ECF no. 103, at pp. 126-27). In his fourteenth claim for relief, Petitioner argues that his prolonged stay on death row makes execution of his sentence unconstitutional under constitutional and international law principles repeatedly rejected by the Supreme Court and Fifth Circuit. (ECF no. 103, at pp. 127-28).

### III. Motion for Discovery

Petitioner requests discovery in connection with his second and seventh claims for relief. Renewed Motion for Discovery and Evidentiary Hearing, ECF no. 94, at 16-21, 32-35. More specifically, with regard to his second claim, Petitioner seeks the deposition testimony of seven individuals, including his 2009 trial counsel and subsequent state habeas counsel, as well as three other persons, and seven categories of documents relating to the medical examiner who performed the autopsy on Robert Laminack. With regard to his seventh claim, Petitioner requests all documents in the possession of the prosecution relating to Petitioner's co-defendant Krystie Lynn Nystrom.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *United States v. Fields*, 761 F.3d 443, 483 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 2803 (2015); *Reed v. Quarterman*, 504 F.3d 465, 471 (5th Cir. 2007). The broad discovery provisions of the *Federal Rules of Civil Procedure* do not apply in habeas proceedings. *Bracy*, 520 U.S. at 904. Instead, if a habeas claim is viable, federal procedural rules permit discovery "for good cause." *District*

*Atty's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009); *Bracy*, 520 U.S. at 904 (quoting Rule 6(a) of the *Rules Governing § 2254 Cases in the United States District Courts*); *Jones v. Davis*, 890 F.3d 559, 573 (5th Cir. 2018) ("A federal habeas judge may, for good cause, authorize a party to conduct discovery."), *cert. denied*, 2019 WL 113242 (Jan. 7, 2019).

"Good cause" for discovery in a habeas proceeding exists when specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Bracy*, 520 U.S. at 908-09; *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *Murphy v. Davis*, 901 F.3d 578, 590 (5th Cir. 2018), *cert. denied*, 2019 WL 887760 (Feb. 25, 2019); *Fields*, 761 F.3d at 483-84; *Reed*, 504 F.3d at 471-72. Federal habeas courts need not allow fishing expeditions, however. *See Murphy*, 901 F.3d at 590-93 (discovery into involvement of experts in preparing reports unnecessary where ineffective assistance claim petitioner sought to develop did not satisfy *Strickland* standard even if the facts petitioner sought to establish could be proven); *Fields*, 761 F.3d at 478-80 (petitioner's speculative and conclusory assertions of actual innocence based upon the alleged absence of physical evidence found in a vehicle that appeared to have been detailed and wiped clean did not justify discovery); *Reed*, 504 F.3d at 477 (discovery into chain of custody unwarranted where petitioner failed to point to specific evidence that once existed and may continue to exist that holds the potential to exonerate him).

Insofar as Petitioner challenges the state trial court's evidentiary ruling admitting the medical examiner's report from Laminack's autopsy, that claim presents a legal challenge to a state court evidentiary ruling. A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious it renders the petitioner's trial fundamentally unfair. *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986); *Wood v. Quarterman*, 503 F.3d

6

408, 414 (5th Cir. 2007); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005).  Thus, the question before this Court is not whether the state trial court properly applied state evidentiary rules but, rather, whether petitioner's federal constitutional rights were violated by the state trial court's rulings on evidentiary matters.  *See Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005) (holding federal habeas review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated the federal Constitution).

> Due process is implicated only for rulings "of such a magnitude" or "so egregious" that they "render the trial fundamentally unfair."  It offers no authority to federal habeas courts to review the mine run of evidentiary rulings of state trial courts.  Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the trial."
> The due process inquiry must consider the significance of the challenged evidence "in the context of the entire trial."  We have held that the Due Process Clause does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not "'so pronounced and persistent that it permeates the entire atmosphere of the trial.'"  This is a high hurdle, even without AEDPA's added level of deference.

*Gonzales v. Thaler,* 643 F.3d 425, 430-31 (5th Cir. 2011) (footnotes omitted).

Petitioner alleges no specific facts showing that the fundamental fairness of his 2009 trial was affected by the state trial court's ruling on the admissibility of Laminack's autopsy report. There was no genuine issue of fact at Petitioner's 2009 trial on the question of whether Laminack died as a result of Petitioner fatally stabbing him.  Petitioner testified that his co-defendant Nystrom was seated in the front seat of Laminack's vehicle and held Laminack's right arm while Petitioner, who was seated in the back seat, reached around Laminack and stabbed him multiple times in the neck.[3]  Petitioner testified that he and Nystrom acted in concert as part of a plan to rob Laminack

---

[3] A substantial portion of Petitioner's testimony during his 2009 retrial (but not a complete record of his trial testimony) appears in the record currently before this Court at ECF no. 89, at pp. 485-616.  Petitioner's testimony describing in detail his role in Laminack's fatal stabbing appears at pp. 523-30, 603.

7

of his vehicle. Petitioner testified further that after stabbing Laminack several times, he ordered Laminack to hand over his wallet and Laminack did so, giving his wallet to Nystrom. When Laminack was unable to comply with Petitioner's order to hand over the vehicle's keys, Petitioner reached over Laminack and removed the keys from the ignition himself. Subsequently, when they exited the vehicle and the dome light inside the vehicle came on, Petitioner saw blood "everywhere." The autopsy report on Laminack reported finding multiple stab wounds and some incised wounds on Laminack's neck and concluded that Laminack died as a result of the stab wounds, which caused exsanguination eventually resulting in cardiac arrest.[4]

Significantly, while Petitioner alleges that the medical examiner who performed Laminack's autopsy committed perjury and falsified evidence in connection with several *other* autopsies, Petitioner makes no specific factual allegation that there was anything factually erroneous about any of the findings made in Laminack's autopsy report. Petitioner suggests that other medical experts who have reviewed the Laminack report could have found a basis for challenging various details therein but alleges no specific facts showing that the ultimate conclusions of Laminack's autopsy report, i.e., that Laminack died as a result of exsanguination resulting from multiple stab wounds to the neck, was factually inaccurate.[5] Moreover, at Petitioner's 2009 retrial on punishment, the fact that Petitioner fatally stabbed Laminack was not genuinely at issue. As explained above, Petitioner testified to these very facts and sought to establish that he was sincerely remorseful for his role in causing Laminack's demise.

---

[4] Multiple copies of Laminack's autopsy report appear in the record currently before this Court, specifically at ECF no. 87, at pp. 321-29, 333-41, 343-51, 354-56.

[5] A report dated May 11, 1997 from a Dr. Lloyd White suggests that the quality of Laminack's autopsy report was poor and that at least some of the wounds to Laminack's neck could have been inflicted from the front. ECF no. 87, at pp. 288-90. Dr. White does not take issue, however, with the ultimate conclusion that Laminack died as a result of stab wounds to the neck that caused massive blood loss leading to cardiac arrest.

Petitioner's 2009 trial counsel testified during Petitioner's second state habeas corpus proceeding that they presented Petitioner's testimony for the purpose of establishing that Petitioner was sincerely remorseful for his actions in causing Laminack's death.[6] Petitioner now argues that if his 2009 trial counsel had advised him differently, he would not have testified at his 2009 retrial and, instead, would have urged his counsel to argue that he was not responsible for Laminack's death. The problem with this assertion is that Petitioner did testify at his 2009 retrial and did not at that time testify that Nystrom was the person who fatally stabbed Laminack. Moreover, Nystrom testified during Petitioner's 2009 retrial. Petitioner does not allege that she offered any testimony suggesting that she, rather than Petitioner, fatally stabbed Laminack. Nor does Petitioner allege any other specific facts showing that Nystrom, as opposed to Petitioner, fatally stabbed Laminack. Under such circumstances, Petitioner has failed to allege any specific facts showing that the state trial court's evidentiary ruling admitting Laminack's autopsy report into evidence, along with the opinion testimony of Dr. Natarajan, who relied upon the autopsy report and the autopsy photographs, rendered Petitioner's 2009 trial fundamentally unfair.

Insofar as Petitioner argues that his trial counsel rendered ineffective assistance by not challenging the admission of Laminack's 1990 autopsy report and not challenging the admission of Dr. Natarajan's 2009 testimony, Petitioner's complaints fail to satisfy either prong of the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland*, 466 U.S. at 687:

---

[6] The testimony of attorney Keith Odiorne appears at ECF no. 81, at pp. 58-255. The testimony of attorney Edward Ray Keith, Jr. appears at ECF no. 81, at pp. 256-96 and ECF no. 82, at pp. 7-172.

9

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687-91. Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins*, 539 U.S. at 523 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009); *Strickland*, 466 U.S. at 688-89. Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694.

As explained above, there was no genuine issue of material fact at Petitioner's 2009 retrial over the cause of Laminack's death. Petitioner was convicted of capital murder in 1991. The state appellate court upheld his conviction on direct appeal and in his initial state habeas corpus proceeding. This Court, the Fifth Circuit, and the Supreme Court all left Petitioner's conviction in place when holding that he was entitled to a new punishment trial. The focus of Petitioner's trial counsel during his 2009 retrial was on obtaining answers from the jury to the Texas capital sentencing special issues that were favorable to the defense. It was objectively reasonable for Petitioner's 2009 trial counsel to conclude that attacking the legitimacy of Petitioner's capital murder conviction (by asserting that Nystrom, rather than Petitioner, delivered the fatal stab wounds to Laminack's neck) could undermine the defense's strategy of showing there was not a probability that Petitioner would commit future acts of criminal violence that would constitute a continuing threat to society. Petitioner's 2009 trial counsel wanted to convince the jury that Petitioner was sincerely remorseful for his capital offense and, therefore, would not pose a risk of future violence while incarcerated. This trial strategy appears to be objectively reasonable given the evidence presented both at Petitioner's original 1991 capital murder trial and his 2009 retrial as to punishment (particularly Petitioner's own testimony in which he detailed how he delivered the fatal stab wounds to Laminack).

Moreover, Petitioner alleges no specific facts showing a reasonable probability that, but for the failure of his trial counsel to attack the admissibility of Laminack's autopsy report or Dr. Natarajan's testimony as to the cause of Laminack's death, the outcome of Petitioner's 2009 trial would have been any different.  Petitioner's 2009 trial counsel reasonably believed that presenting Petitioner as sincerely remorseful for his capital offense was the best way to obtain answers from the jury favorable to the defense on the Texas capital sentencing special issues.  The prosecution bore the burden of establishing Petitioner's future dangerousness beyond a reasonable doubt. There is no reasonable probability that having Petitioner stand mute at his 2009 retrial and arguing instead to the jury that Petitioner's co-defendant Nystrom was solely responsible for Laminack's fatal stabbing would have altered the jury's answers to any of the Texas capital sentencing special issues.  On the contrary, adopting such an inane strategy would have opened the door to prosecutorial argument suggesting that, despite the passage of almost two decades, the Petitioner remained a remorseless, unrepentant predator.  Not only would Petitioner's new proposed strategy have undermined the efforts of his 2009 trial counsel to obtain a favorable jury answer to the future dangerousness special issue, it would also likely have diminished the efficacy of the mitigating evidence the defense presented in 2009.  Petitioner testified extensively and movingly in 2009 regarding his difficult upbringing.

Having Petitioner stand mute in 2009 would have been quite possibly the least efficacious trial strategy Petitioner's 2009 trial counsel could have adopted.  There is no reasonable probability that such a strategy would have altered the jury's answers to any of the Texas capital sentencing special issues.  Under such circumstances, Petitioner is not entitled to discovery with regard to his multifarious second claim for federal habeas corpus relief.

Petitioner's request for discovery with regard to his seventh claim is even less persuasive. It appears undisputed that, at trial in 2009, the prosecution presented the state trial court with extensive medical records, including presumably mental health records, from Petitioner's accomplice Krystie Nystrom. After conducting an in-camera examination, the state trial court did not turn the records over to Petitioner's 2009 trial counsel. Petitioner argues that discovery is necessary to resolve a factual dispute as to whether the prosecution had custody of Nystrom's medical records. But in practically the same breath, Petitioner alleges that the record from Petitioner's 2009 retrial shows the prosecution furnished the state trial court with sealed records from Nystrom's stay at a state hospital. Whether the state trial court properly ruled on whether to turn Nystrom's medical records over to defense counsel presents a pure question of law. Whether that state court evidentiary ruling rendered Petitioner's 2009 trial fundamentally unfair likewise does not appear to turn upon the resolution of any genuine factual disputes. The records in question will speak for themselves. Petitioner has not established the existence of good cause for discovery into either his second or seventh claims for relief. It is recommended that Petitioner's renewed motion for discovery be denied.

### IV. <u>Motion for Evidentiary Hearing</u>

Petitioner requests an evidentiary hearing to resolve his first, second, fourth, fifth, and seventh claims for relief. At this juncture, Respondent has yet to file his answer to Petitioner's second amended petition, Petitioner has yet to file his reply thereto, and the Respondent has yet to submit to this Court any of the pertinent state court records from Petitioner's 1991 trial, 2009 retrial, or from the direct appeals and state habeas corpus proceedings following each of those trial court proceedings.

Insofar as Petitioner's claims in this federal habeas corpus proceeding were disposed of on the merits during the course of his direct appeal or state habeas corpus proceeding, he is not entitled to a federal evidentiary hearing to develop new evidence attacking the state appellate or state habeas court's resolution of his claims. Under AEDPA, the proper place for development of the facts supporting a federal habeas claim is the state court. *See Harrington v. Richter*, 562 U. S. at 103 ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court). Where a petitioner's claims have been rejected on the merits, further factual development in federal court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, 563 U. S. 170, 181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Thus, Petitioner is not entitled to a federal evidentiary hearing on any of his claims that were rejected on the merits by the state courts, either on direct appeal or during his state habeas corpus proceeding. *See Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (quoting *Cullen*, 563 U.S. at 185)), *cert. denied*, 140 S. Ct. 167 (2019).

Because the Respondent has not yet submitted complete records from all of Petitioner's relevant state court proceedings, it is currently impossible to determine whether any of the claims contained in Petitioner's second amended petition have truly been disposed of on the merits by the state courts in the course of Petitioner's two direct appeals or three state habeas corpus proceedings.

With regard to the new factual allegations and new legal arguments Petitioner failed to fairly present to the state courts in his unexhausted claims for relief, it is far from clear whether this Court should undertake de novo review of those claims. Until this Court has had an opportunity to review all of the parties pleadings and the relevant state court records, any ruling on Petitioner's motion for an evidentiary hearing would be premature. Clairvoyance is not a required attribute of effective assistance. *United States v. Fields*, 565 F.3d 290, 295 (5th Cir. 2009); *Sharp v. Johnson*, 107 F.3d 282, 289 n.28 (5th Cir. 1997). Nor is it required of a federal habeas court. Until the record permits intelligent review of the merits of Petitioner's claims, including review of all relevant state court records, it is premature to resolve Petitioner's motion for an evidentiary hearing. It is recommended that Petitioner's renewed motion for an evidentiary hearing be carried forward until all relevant pleadings have been filed and all relevant state court records have been submitted for review by this court.

## V. Recommendation

For the foregoing reasons, it is the recommendation of the undersigned Magistrate Judge that (1) Petitioner's renewed motion for discovery, filed January 9, 2020 (ECF no. 94), be **DENIED**; and (2) Petitioner's renewed motion for an evidentiary hearing, also filed January 9, 2020 (ECF no. 94), be carried forward until the filing of all relevant pleadings and the submission of all relevant state court records.

## VI. **INSTRUCTIONS FOR SERVICE**

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED July 23, 2020.

*(signature)*
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### \* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).