U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 2 2022

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

BRENT RAY BREWER,                    §
                                     §
            Petitioner,              §
                                     §
v.                                   §          2:15-CV-050-Z-BR
                                     §
DIRECTOR, TDCJ-CID,                  §
                                     §
            Respondent.              §

## ORDER

Before the Court is Petitioner Brent Ray Brewer's ("Petitioner") Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) and for Certificate of Appealability ("CoA") filed on March 8, 2022 ("Motion") (ECF No. 142). Respondent Director of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID") ("Respondent") filed a Response in Opposition to Petitioner's Motion on March 28, 2022 ("Response") (ECF No. 143). Having considered the parties' pleadings, procedural history, and relevant law, the Court **DENIES** Petitioner's Motion.

### BACKGROUND

On September 30, 2021, the Magistrate Judge entered a Findings, Conclusions, and Recommendation ("FCR") denying Petitioner's Second Amended Petition for Writ of Habeas Corpus and a CoA (ECF No. 131). After an independent review of the pleadings, records, and objections to the Magistrate's FCR, this Court overruled parties' objections, adopted the Magistrate's FCR, and denied Petitioner's Second Amended Petition for Writ of Habeas Corpus, request for an evidentiary hearing, and a CoA. *See generally* ECF No. 140.

In this Motion, Petitioner asks the Court to reconsider Claim VII in his Second Amended Petition. ECF No. 142 at 4. Claim VII alleges suppression of Kristie Nystrom's ("Nystrom") mental-health records violated his right to due process. *See* ECF No. 103 at 119.

### LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment. Rule 59(e) — however — may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 519 n.5 (2008). "Rule 59(e) of the Federal Rules of Civil Procedure allows a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact. It is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). Absent a manifest error of law or fact, newly discovered but previously unavailable evidence, or an intervening change in controlling law, relief is unavailable under Rule 59(e). *Jennings v. Towers Watson*, 11 F.4th 335, 345 (5th Cir. 2021); *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

### ANALYSIS

Petitioner was convicted and sentenced to death in 1991. In 2009, he was retried on punishment and resentenced to death. At every interval, the evidence and testimony affirmed Petitioner's callous disregard for human life and "future dangerousness" to society. In contrast to Petitioner's original capital-murder trial, Petitioner *and* his accomplice, Nystrom, testified in detail about the circumstances of their capital offense at Petitioner's 2009 retrial.

Petitioner argues this Court erred in rejecting his *Brady* claim and in denying him a CoA for his claim that his trial counsel should have been given access to Nystrom's medical records. *See* ECF No. 142 at 4. This is not a case in which the prosecution failed to disclose information to the defense. Rather, during Petitioner's 2009 retrial as to punishment — prior to Nystrom's testimony — the prosecution announced in open court it had custody of Petitioner's and Nystrom's medical records from the Big Spring Hospital, where both met several months before their capital offense. At the prosecution's request, the state court undertook in camera review of Nystrom's medical records and ruled the records should not be disclosed to Petitioner's counsel.[1] Petitioner has never directly challenged the legal efficacy of the state court's ruling. Instead — during his second state habeas corpus proceeding — Petitioner argued his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated when his 2009 counsel were not granted access to Nystrom's Big Spring medical records. *See* ECF No. 103 at 119.

The Magistrate Judge found — and this Court agreed — Nystrom's medical records were neither beneficial to Petitioner during his 2009 retrial nor "material" within the meaning of *Brady*. ECF No. 131 at 81–85; ECF No. 140 at 22. Petitioner's present Motion consists of little more than a rehashing of the legal and factual arguments this Court rejected on the merits in its February 8, 2022 Order. Rule 59(e) does not permit a litigant to rehash the same arguments a federal district court has rejected on the merits. *Trevino*, 944 F.3d at 970.

As the Magistrate Judge correctly concluded, the state trial court's evidentiary ruling on Nystrom's Big Spring medical records did not render Petitioner's 2009 retrial fundamentally unfair. *See* ECF No. 131 at 80. By 2009, Nystrom's Big Spring medical records were 18-years old, lacked any reference to Petitioner's and Nystrom's forthcoming capital offense, and did not furnish

---

[1] The prosecution tendered Petitioner's medical records from the Big Spring facility to Petitioner's 2009 trial counsel.

a legitimate basis for impeaching Nystrom's 2009 testimony. Petitioner argues some entries in Nystrom's Big Spring medical records indicated staff at that medical facility considered Nystrom to be "manipulative" and to have "poor impulse control." EFC No. 142 at 4. At the time those entries were made — however — Nystrom was undergoing drug-dependency treatment. ECF No. 140 at 21.

Of greater significance — by the time Nystrom chose to testify at Petitioner's 2009 retrial — Nystrom had been incarcerated for almost two decades, serving a life sentence for her role as an accomplice in the capital murder Petitioner committed. Petitioner does not allege any facts suggesting how the 18-year-old observations of Nystrom's demeanor could have impeached her credibility. Petitioner puts forth no facts demonstrating Nystrom remained a recovering drug addict or sought drug-abuse therapy at the time she testified at Petitioner's 2009 retrial. Petitioner further fails to identify Texas case law supporting an absolute right to employ medical records as a basis for impeaching the credibility of a prosecution witness. Even if the state trial court's ruling was erroneous or an abuse of discretion, non-disclosure of Nystrom's 18-year-old medical records does not establish a violation of Petitioner's *Brady* claim because the records were not material to the outcome of Petitioner's 2009 retrial.

Nystrom's and Petitioner's description of the capital offense in their 2009 trial testimonies were strikingly similar. Both witnesses described: (1) plans to rob someone to get a vehicle to drive to Dallas; (2) their unsuccessful attempt to convince a woman leaving a bar to give them a ride; (3) their encounter with Laminack as he was leaving a place of business late at night and how they convinced him to give them a ride to the Salvation Army; (4) only a short distance later, Petitioner reached out from the seat behind Laminack, grabbed Laminack by the neck, and stabbed Laminack multiple times in the neck; (5) Petitioner *alone* had fatally stabbed Laminack; (6) the fatal assault

on Laminack took place prior to when either Petitioner or Nystrom asked Laminack to turn over his wallet or the keys to his pickup truck.

Contrary to Petitioner's assertions, Petitioner's and Nystrom's 2009 descriptions of their joint capital offense differed in only two respects. First, Petitioner testified that, while he was grabbing and stabbing Laminack, Nystrom sat beside Laminack and held Laminack's right arm. ECF No. 140 at 8. Nystrom testified while Petitioner fatally stabbed Laminack, she sat in the front passenger seat looking out the passenger window away from the horrific scene.[2] ECF No. 140-1 at 64. Second, both Nystrom and Petitioner each claimed they removed Laminack's keys from the ignition after Laminack stopped struggling with them. ECF No. 140 at 5–6. The Magistrate Judge rightly concluded successfully impeaching Nystrom on these two points would not have reasonably altered the outcome of Petitioner's retrial. ECF No. 140-1 at 83. In the same way, Nystrom's medical records would have done little to mitigate the evidence demonstrating the brutality of Petitioner's offense or diminish the prosecution's evidence demonstrating Petitioner's escalating pattern of violence leading to Laminack's murder.

Further, the material Petitioner seeks for impeachment would not have countered the detrimental impact of the prosecution's evidence. The evidence at Petitioner's 2009 retrial — just like Petitioner's 1991 capital murder trial — showed Petitioner displayed an escalating pattern of violence culminating to Laminack's brutal murder. It was undisputed that Petitioner had previously assaulted his high school girlfriend with sufficient force to cause a back injury requiring her to undergo months of physical therapy. ECF No. 140-1 at 63. Likewise, Petitioner had previously assaulted his biological father with sufficient force causing a fractured skull necessitating emergency surgery. *Id.* Evidence also demonstrated Petitioner had a fascination with knives from

---

[2] However, the physical, forensic, video, and photographic evidence presented to the jury strongly suggested Petitioner's version of the stabbing was more credible. ECF No. 140-1 at 71.

an early age. *See generally id.* Perhaps most damaging to Petitioner's efforts to obtain a life sentence was State Exhibit No. 202 (ECF No. 124-15 at 203), which showed Petitioner seated in a patrol car defiantly shooting his middle finger toward a photographer.

Moreover, Petitioner does not identify specific testimony given by Nystrom in 2009 that could have been directly impeached by information in Nystrom's Big Spring medical records. Instead, Petitioner argues his trial counsel could have employed Nystrom's medical records to impeach Nystrom's credibility generally by challenging her character as "manipulative" and lacking in impulse control. ECF No. 142 at 4. Assuming such an opportunity existed in 2009, Petitioner's 2009 trial counsel testified they did not wish to pursue such a strategy because it would be inconsistent with their strategy to have Petitioner take the stand in 2009, confess his role in Laminack's murder, express sincere contrition and remorse for his conduct, and accept responsibility for his actions. ECF No. 140-1 at 140. Attempting to cast Nystrom as the principal planner and the party most responsible for Laminack's murder could have undermined the efficacy of Petitioner's 2009 testimony in which he attempted to express sincere remorse for his capital offense. It also likely would have opened the defense up to an argument that Petitioner's expressions of remorse and contrition were insincere.

A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or present newly discovered evidence; such motion cannot be used to raise arguments which could, and should, have been made before the judgment issued. *Rollins v. Home Depot USA*, 8 F.3d 393, 396 (5th Cir. 2021); *Life Ps. Creditors' Trust v. Cowley*, 926 F.3d 103, 128 (5th Cir. 2019); *Bolton v. United States*, 946 F.3d 256, 262 (5th Cir. 2019). Petitioner has neither identified a manifest error of law or fact nor newly discovered evidence to warrant a different outcome in this federal habeas corpus proceeding.

Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *Schiller*, 342 F.3d at 567. Petitioner fails to identify an intervening change in law warranting alteration or amendment of the judgment in this case. Reconsideration of a judgment after its entry is an extraordinary remedy and should be used sparingly. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Petitioner has failed to meet this standard for extraordinary relief.

### CONCLUSION

Petitioner's Motion is little more than a rehashing of his arguments for federal habeas relief. The Court hereby **ORDERS**:

1.   All relief requested in Petitioner's Motion is **DENIED**;

2.   Petitioner is **DENIED** a Certificate of Appealability on all claims in his Motion.

**SO ORDERED**.

April _11_, 2022

————————————————————
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE